SUMMERS, Justice.
On July 16, 1974, Milby Williams III was charged by bill of information with having “unlawfully attempted to murder Sgt. Douglas Masters” on February 2, 1974. After a jury trial on March 11, 1975 defendant was convicted of attempted manslaughter and sentenced to ten and one-half years.
At two-o’clock on the morning of February 2, 1974 Sergeant Douglas Masters of the City of Natchitoches police received a radio call that a disturbance was in progress at Apartment L-7 of the J. W. Thomas Apartments. Four police cars responded to the call. As Sergeant Masters arrived he noted that others who had preceded him were leaving. When he inquired about the disturbance he was told there was no trouble at that particular apartment.
At that time Sergeant Masters heard a shot in the vicinity of the Trudeau Street extension at North Street. He then proceeded to Trudeau Street and thence to Lee Street. As he drove along a man ran across the street ahead of him at an angle. When the man got to the nearby ditch bank, he stopped and turned, firing two shots in the direction of the patrol car occupied by Masters. These shots were heard by Masters and he saw the muzzle flash from the pistol in the fleeing man’s hand. In the street light at that location Masters observed the man’s clothing, a lightish blue or purplish colored shirt and dark pants. Later inspection failed to reveal any bullet holes in the patrol car.
Masters applied the car brakes and got out of the patrol car but the man disappeared between two apartment buildings. Masters then radioed for assistance. Other officers, as well as the Chief of Police, arrived on the scene. Some of them went to the apartment of defendant’s parents in the same complex, but received little information from defendant’s mother, who was alone. Then they went to defendant’s brother’s apartment in the same building, which they searched with the brother’s permission. As they were leaving they noticed defendant beneath a parked car. He emerged from hiding, and while he was being searched the Chief of Police felt what he believed to be a pistol handle in defendant’s back pocket. At this point defendant broke loose and ran away. Soon thereafter he was found hiding beneath a house in the neighborhood. No pistol was found on his person, but a pistol was found under the house near the spot where he had been lying in hiding. Three spent cartridges and three live rounds were in the pistol. Defendant testified that he was drunk that evening; that he was an epileptic; and that he did not have a pistol that night.
Defendant assigns as error that a review of the entire record discloses “no evidence to support the findings of the Jury that the defendant was guilty of the lesser included offense of Attempted Manslaughter, the defendant being charged with Attempted Murder.”
*401 A verdict of attempted manslaughter is responsive to a charge of attempted murder. La.R.S. 14:27, 30, 30.1, 31; La.Code Crim.Pro. Arts. 465, 814; State v. Peterson, 290 So.2d 307 (La.1974). If there is some evidence of the crime, no matter how little, such as the shooting in the case at bar, this Court will not inquire into the sufficiency of the evidence. As we understand the recited facts, the jury could find that defendant attempted to kill Sergeant Masters while on duty by shooting at him with specific intent to kill or inflict great bodily harm, but the jury exercised its statutory right to return the lesser responsive verdict of attempted manslaughter. La.R.S. 14:27, 30, 30.1, 31; La.Code Crim.Pro. Art. 465, 814. There was some evidence.
For the reasons assigned, the conviction and sentence are affirmed.