738 So.2d 104 (1999)
STATE of Louisiana
v.
Anthony J. FAUCHETTA.
No. 98-KA-1303.
Court of Appeal of Louisiana, Fifth Circuit.
June 1, 1999.
*105 Laurie A. White, Louisiana Appellate Project, New Orleans, Attorney for Appellant, Anthony J. Faucetta.
Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Walter G. Amstutz, Assistant District Attorneys, Gretna, Attorneys for Appellee, The State of Louisiana.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
Anthony Fauchetta appeals his conviction of two counts of attempted first degree murder. We affirm, but remand for correction of a patent error.
On April 18, 1997, Fauchetta was charged by bill of information with two counts of violation of La. R.S. 14:27:30(A)(2), attempted first degree murder of a police officer. A motion to appoint a sanity commission to determine the defendant's competency to stand trial was filed prior to issuance of the bill of information. After a sanity hearing on June 26, 1997, the court found the defendant competent to stand trial. At arraignment on the same date, the defendant pleaded not guilty. On August 20, 1997 the defendant changed his plea from not guilty to not guilty and not guilty by reason of insanity.
On March 30, 1998, the defendant waived his right to a jury and proceeded to a trial by the court over the course of that day and the next. On March 31, 1998, the trial court found the defendant guilty as charged on both counts. On April 15, 1998, the defendant's motion for new trial was denied and the trial court sentenced him to ten years at hard labor on each count, to run concurrently, without benefit of parole, probation or suspension of sentence. The defendant's motion to reconsider sentence was denied on June 17, 1998. The defendant filed a timely appeal.

FACTS
The parties stipulated at trial that the defendant's wife, Stephanie Fauchetta, called 911 in the early morning hours of April 14, 1997.
Deputy David Roddy of the Jefferson Parish Sheriffs Office testified that on April 14, 1997 he responded to three 911 calls made from 7324 Wedmore Court in Marrero. He arrived at the address at the same time as Deputy Pinac, also of the Jefferson Parish Sheriffs Office. They knocked on the door and the defendant answered. He told them that nobody had called the police. Deputy Pinac told the defendant he wanted to see the left side of his body. The defendant replied that he was paralyzed and could not move.
The officers told the defendant they had received a 911 call and it was policy to check everybody in the house to make sure everything was okay. The defendant again replied that nothing was going on, at which point the defendant's wife shouted from the background that she had called the police.
Deputy Roddy opened the screen door in an attempt to enter the house. Deputy Pinac cautioned Roddy to be careful because *106 they still could not see the left side of the defendant's body. Roddy proceeded to open the door. Suddenly the defendant raised a rifle and fired three shots between the officers. The deputies dove out of the way.
The defendant went back into the house, barricading himself inside. Several minutes later Deputy Roddy saw the defendant's wife and son driving out in a van. Mrs. Fauchetta advised the police that the defendant had a "bunch of guns" in the house and that he wanted to "kill the police when they arrived." Roddy told the court that both he and Deputy Pinac were in uniform when the approached the defendant's house.
Deputy Rene Pinac corroborated Deputy Roddy's testimony, adding that he was directly in the path of the bullets fired by the defendant and was cut by glass flying from the glass door through which the defendant shot.
Lieutenant Edith Evans of the Jefferson Parish Sheriff's Office also responded to the emergency call at the Wedmore Court address that evening. Evans testified that she negotiated with the defendant for about eight minutes while he was barricaded in the house. She stated the defendant came out because she told him she would get him some relief for the pain he was feeling in his back.
Dr. Jodie Holloway, an expert in forensic psychiatry, testified on behalf of the defense regarding her psychiatric evaluation of the defendant. The defendant told her that during the evening of the incident, he had taken an excessive amount of prescription medication, including several types of pain medication, Xanax, Soma, and alcohol, in a suicidal attempt to slow down his total body functioning. The defendant told Dr. Holloway that later in the evening, while reaching over to get some water, he experienced an intense pain and accidentally hit his wife, who was next to him.
The defendant then related that his wife called the police and he went to get a gun. He told the doctor he had threatened in the past that if his wife called the police, he would shoot toward them to lure the officers into killing him. Dr. Holloway said the defendant told her that shooting toward the police was a suicidal gesture on his part, but that he had no intention to harm them.
In describing the incident to Dr. Holloway, the defendant said he aimed his gun in the twelve o'clock position to avoid hitting the police. He told Dr. Holloway that he was surprised the police fled, so he shot two more rounds in an effort to get them to shoot back.
Dr. Holloway also interviewed Mrs. Fauchetta, who told her that on the evening in question the defendant beat her with a metal cane. Mrs. Fauchetta told Dr. Holloway that she called the police because the defendant had a gun pointed at her and their 15-year-old son, Gabriel, and she was afraid the defendant was going to kill them.
Mrs. Fauchetta also told Dr. Holloway of past incidents in which the defendant had been violent, physically abusive and paranoid. Mrs. Fauchetta stated that the defendant had threatened to shoot or to act as if he was going to injure the police, in order to get the police to kill him.
In addition Dr. Holloway interviewed Gabriel Fauchetta, who corroborated his mother's version of the incident. He added that the defendant's gun was pointed up and that, before answering the door, the defendant told Gabriel, "Good-bye, this is the last time I'll see you." Gabriel told Dr. Holloway that he believed his father truly wanted the police to kill him. Gabriel also said that for the few weeks prior to the incident, the defendant thought the FBI was tapping the phones and could "see into the house through the TV line, even when the TV was off."
According to Dr. Holloway, at the time of the incident the defendant was suffering *107 from a "major depressive disorder with psychotic features and paranoia, partner and child relational problems," and abuse of alcohol and prescription medications. However, she ultimately concluded that the defendant was capable of telling right from wrong at the time of the incident. Dr. Holloway opined that the defendant did not have the intent to kill a police officer, although he did have the intent for the process to take place.
On cross-examination Dr. Holloway told the court that the defendant had a "problem with credibility" and that three months before the incident, the defendant did not appear to be in distress or to be having any mental problems.
Anthony Fauchetta testified on his own behalf. He told the court he had not been employed from June 1993 until the date of the trial because of a work injury. He regularly suffered excruciating pain and depression as a result of the injury.
On the evening of April 14, 1997, while he was in the kitchen getting some water he experienced severe lumbar pain. He reacted, accidentally hitting his wife with a cane. His wife told him that she had called the police. He then "saw the opportunity [he] was looking for to escape all the pain." The only way he saw to end his suffering was to recruit the police to kill him.
Mr. Fauchetta reasoned that if he got the police to kill him, rather than killing himself, his wife and son would be able to collect his life insurance and worker's compensation payments, plus Social Security payments. He said his plan was to "inflict some bodily harm" upon the police so they would "act on their instincts to preserve life and return fire, and that wouldn't look like suicide, and the insurance company would have to pay off."
Fauchetta testified he is an excellent marksman and his intent was to shoot between the police officers. He said the threats to kill his wife were a "staged verbal thing to enhance her to do what she did." He testified he had never previously threatened his wife, although he had "pulled theatrics with her" and had memory lapses under the medication. The defendant admitted that he was affected by the medication and alcohol that night and was not thinking straight, but stated he did not intend to kill or inflict bodily harm on the police officers.
Based on the foregoing facts, the court found the defendant guilty as charged.

ASSIGNMENT OF ERROR NO. 1
In his sole assignment of error the defendant asserts he was denied his right to due process of law under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Louisiana Constitution as there was insufficient evidence to provide specific intent to kill the police officers.
The State responds that the requisite intent was proven.
In reviewing the sufficiency of the evidence, due process requires the reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
The defendant was convicted of attempted first degree murder of a peace officer, in violation of La. R.S. 14:30(A)(2) and La. R.S. 14:27. First degree murder is the *108 killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties. La. R.S. 14:30(A)(2). "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose." La. R.S. 14:27.
To prove an attempted murder, whether first or second degree, the State must establish, beyond a reasonable doubt, that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. La. R.S. 14:27, 14:30; State v. Guccione, 96-1049 (La.App. 5 Cir. 4/29/97), 694 So.2d 1060, 1067.
Although specific intent to inflict great bodily harm may support a murder conviction, attempted murder requires a specific intent to kill. State v. Holmes, 94-907 (La.App. 5 Cir. 3/15/95), 653 So.2d 642, 645.
At the conclusion of the trial the trial judge stated extensive reasons for her decision to convict the defendant:
THE COURT:
All right. Mr. Fauchetta is charged in a two-count bill of information with two counts of attempted first-degree murder. In order to prove-and Mr. Fauchetta has pled not guilty, not guilty by reason of insanity. In order to make a case of not guilty by reason of insanity, Mr. Fauchetta's case-what Mr. Fauchetta would have actually had to prove [is] that, vis-a-vis the McNaughton [M'Naghten] Rule, he did not basically know right from wrong. Mr. Fauchetta's expert witness, Dr. Holliday-Holloway, has refuted that in her own testimony, stating that, in fact, he did know right from wrong. Therefore, not guilty [by reason of insanity] is not an appropriate verdict in this case.
The question then comes to the question of specific intent. The crime of first-degree murder requires, in this case, that the offender had specific intent to kill or inflict great bodily harm upon a fireman or peace officer. Obviously, we have two peace officers. The responsive verdict, which is aggravated battery, requires simply general criminal intent, which is an aggravated battery committed with a dangerous weapon. So this entire case rises and falls on whether or not Mr. Fauchetta had the specific intent to kill or commit great bodily harm.

Dr. Holloway says no. When Dr. Holloway testified, she testified, basically, that the basis for her opinion was what Mr. Fauchetta told her. Interestingly, Mr. Fauchetta described for Dr. Holloway a situation in which his gun was at 12 o'clock. Mr. Fauchetta, therefore-thereafter in great detail on the witness stand described a situation where the gun was not at 12 o'clock, but was rather at 10 o'clock. The gun being at 10 o'clock as described by Mr. Fauchetta in his testimony is inconsistent with the testimony of the two officers. So we have a question of who's more credible than the other.
Now, Mr. Fauchetta says that he was under the influence of drugs and alcohol at the time and that that affected his perception. The officers-there is nothing to indicate that the officers' perception was affected. Aside from that, however, is the fact that the posture of the weapon, as described and pointed out by Mr. Fauchetta, is one that is difficult to maintain. It is not a comfortable manner in which to hold a gun and would have given the officers an opportunity to fire back long before Mr. Fauchetta had fired at them, and they would have been entitled to do that since he was in the throes of pointing a weapon.

*109 Importantly in this case is the fact that Mr. Fauchetta, in great detail, explains that what he wanted was for someone to kill him. As Mr. Amstutz points out in his argument, the easiest way for Mr. Fauchetta to have that happen after he had fired the gun would have been to walk out his front door with the gun pointed, and Mr. Fauchetta most certainly would have been shot dead at that point. He did not do that. He closed the door and held hostages... No, let me not say that. He closed the door and barricaded himself in his home.
Important in this case is the-I am putting aside by the way-the doctor testified that she did not rely upon Dr. Culver and Dr. Richoux. I'm putting aside anything Dr. Culver or Dr. Richoux said with regard to statements made to them by Mr. Fauchetta. I am, however, relying upon the statements made by Mr. Fauchetta to Dr. Holloway and to the other psychiatrist upon whom she relied in her opinion.
Mr. Fauchetta forgot to tell the doctors about the numerous weapons in the house. In Mr. Fauchetta's testimony, he gave an explanation, i.e., an excuse, for all the weapons in his house. They weren't really his guns. They were somebody else's guns. They were enclosed in a case. The case wasn't really open. The case got open when the police got there.
When asked by Dr. Holloway about his prior history of violence with his fourth wife, Mr. Fauchetta minimized or downplayed his violent former actions of violence with his wife and minimized the violence with his wife that night. He didn't intend to hit her with the cane. He didn't know where she was. He didn't ever intent to hurt her. That is belied by Mrs. Fauchetta's explanation of ongoing violence as explained to Dr. Holloway.
Mr. Fauchetta, by his account, did not mean to hurt his wife that night, didn't know she was going to call the police, and devised a grand scheme whereby he would get shot in the short period of time which occurred between the time that his wife called the policehe found out she called the police, and he-and the police arrived, and he addressed them at the door.
Basically, Mr. Fauchetta's testimony is utterly incredible. Therefore, the Court must rely upon the explanation given by the police, along with the common sense inferences made therefrom. Based upon this, I find that Mr. Fauchetta is guilty of two counts of attempted murder in the first degree. [Emphasis Added]
It is apparent that the trial court carefully assessed the credibility of the defendant in deciding to convict.
The defendant argues that the trial court failed to take into account Dr. Holloway's conclusion that the defendant did not have the specific intent to harm the police officers. However, the trial judge stated specifically that she was "relying upon statements made by Mr. Fauchetta to Dr. Holloway." Dr. Holloway's impressions came directly from her interview with the defendant.
The trial court failed to find the defendant's testimony credible. The credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. The credibility of witnesses will not be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. The Louisiana Supreme Court has recently held that "the Jackson standard does not serve as a vehicle for a reviewing court to second guess the rational credibility determinations of the factfinder at trial." State v. Juluke, 98-341 (La.1/8/99), 725 So.2d 1291, 1293, 1999 WL 21252, *3, citing State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983).
The sufficiency of the evidence in this case rests upon a credibility finding. Accordingly, *110 under a Jackson review it would not be appropriate for this Court to reverse the trial court's determination.

ERROR PATENT DISCUSSION
Our examination of the record reveals two patent errors.
The defendant's motion for new trial was denied on April 15, 1998. Immediately after denial of the motion, the trial court imposed sentence. La.C.Cr.P. art. 873 provides:
If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, a sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
The immediate imposition of sentence is an apparent violation of this article.
However, absent a showing that prejudice resulted from the failure to observe the delay, reversal of the prematurely imposed sentence is not required. State v. Seals, 95-305 (La.11/25/96), 684 So.2d 368, 380, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). An error in sentencing a defendant without a 24-hour delay is harmless where the defendant neither complains of the sentence nor claims to have been prejudiced by the mistake. State v. Forrest, 95-31 (La.App. 5 Cir. 2/14/96), 670 So.2d 1263, 1272, writ denied, 96-0654 (La.6/28/96) 675 So.2d 1117. The defendant does not complain of his sentence on appeal. Therefore, the failure to abide by the 24-hour delay is harmless error.
The record further reflects that the trial court failed to advise the defendant of the time limitation within which he can file for post conviction relief. La.C.Cr.P. art. 930.8 provides that a defendant has three years after his judgment of conviction and sentence become final within which to apply for post conviction relief. Paragraph C of the article requires that the trial court inform the defendant of the prescriptive period at the time of sentencing. The trial court in this case failed to comply with this requirement. Accordingly, the district court hereby is ordered to send written notice of the prescriptive period provided by La.C.Cr.P. Art. 930.8 to the defendant within 10 days of the rendering of this opinion. Thereafter the district court shall file written proof in the record that defendant received such notice. See State v. Kershaw, 94-141 (La.App. 5 Cir. 9/14/94), 643 So.2d 1289; State v. Procell, 626 So.2d 954 (La.App. 3 Cir.1993); State v. Sumlin, 605 So.2d 608 (La.App. 2 Cir. 1992).
For the foregoing reasons, the defendant's conviction and sentence are affirmed. The case is remanded to the trial court for further action consistent with this opinion.
AFFIRMED AND REMANDED.