894 So.2d 1240 (2005)
STATE of Louisiana, Appellant
v.
Calvin James MITCHELL, Appellant.
No. 39,305-KA.
Court of Appeal of Louisiana, Second Circuit.
February 17, 2005.
*1242 Larry English, Shreveport, for Defendant/Appellant.
Paul J. Carmouche, District Attorney, Dale G. Cox, Assistant District Attorney, for Plaintiff/Appellant.
Before BROWN, GASKINS and CARAWAY, JJ.
CARAWAY, J.
A jury convicted Calvin James Mitchell ("Mitchell") of second degree murder and attempted manslaughter. After Mitchell filed a motion for a post-verdict judgment of acquittal, the trial court reduced the second degree murder conviction to manslaughter. Mitchell received concurrent sentences of fourteen years at hard labor for the manslaughter conviction and six years at hard labor for the attempted manslaughter conviction. The state and Mitchell have both appealed. We affirm the attempted manslaughter conviction and sentence and reinstate the second degree murder conviction and remand for resentencing.

Facts
During the late evening hours of April 14, 2000, four young men, Eric Persley ("Persley"), Billy Smith ("Smith"), Demetrius Christaw ("Christaw"), and Mitchell patronized Lacy's, a Shreveport nightclub. Lacy's is located at the southwest corner of Spring Street and Texas Street, a major intersection in downtown Shreveport. The club entrance faces Texas Street. The foot of the Texas Street Bridge which crosses the Red River is on the east side of the intersection.
The group of men traveled to the club in Persley's white, late-model Mercedes Benz, which he parked on Spring Street immediately south of the intersection and across Spring Street from Lacy's. While in the club, Persley and Smith got into a verbal altercation with at least two other patrons. Although that initial altercation ceased, Smith later engaged in a physical fight with the same two men and received several blows. Mitchell was not involved in either exchange.
As the result of the incidents, however, the four men were ejected from the nightclub. At the same time or soon thereafter, *1243 Lacy's began closing, which caused a lot of people to mill around near the entrance to the nightclub. Persley, Smith, Christaw and Mitchell went back to Persley's car. Persley gave Mitchell the keys and Mitchell got into the driver's seat. Persley and Smith subsequently armed themselves with semi-automatic Glock pistols and left the vehicle.
Officers Shannon Presley and Matthew Reardon, uniformed bicycle patrol officers with the Shreveport Police Department, were on duty on Spring Street approximately one block north. They heard gunshots and hurried towards the nightclub, where they observed Persley firing indiscriminately into the crowd. One of the bullets struck the door of the nightclub. Another hit and killed Rodrigues Rusley, an innocent bystander.
Officers Presley and Reardon ordered Persley to drop his gun. Despite repeated warnings from police, Persley did not comply and instead began walking backwards towards the parked Mercedes. Smith fled the scene on foot and was not apprehended by police.[1] The officers saw Persley enter the vehicle through an opened back door as they each attempted to secure one end of the car. Thereafter, the car accelerated twice in the direction of Officer Presley. The officers shouted for the defendant to stop the car and drop the weapons. When their demands went unheeded, Officers Presley and Reardon began firing into the car. One of the shots hit Mitchell in the face; thereafter, the car decelerated, rolling forward until it came to a complete stop.
Persley and Mitchell were removed from the vehicle and handcuffed. While the police were involved with these two, Christaw left the scene. He was never arrested, although he did testify as a state's witness at the trial.
Mitchell was charged as being a principal for the second degree murder of Rusley and also attempted first degree murder of the officer. Persley was charged separately with second degree murder of Rusley. The two men were tried separately. After Mitchell's conviction in this case, but prior to sentencing, Persley was convicted of the manslaughter of Rusley.
After the conviction, Mitchell's trial counsel filed Motions for New Trial and Post-Verdict Judgment of Acquittal. Thereafter, Mitchell obtained new counsel who supplemented the earlier motions. In pertinent part, those motions alleged that the verdicts were contrary to the law and evidence as the state failed to prove that Mitchell possessed the requisite intent to kill either Rusley or Officer Presley or that he was even aware of Persley and Smith's intent to shoot into the crowd. The supplemental motions, which were filed after Persley's conviction, added that Mitchell's verdict should be overturned or reduced because the shooter received only a manslaughter conviction.
The trial court denied the initial motions submitted by Mitchell's trial counsel. The trial court, however, found merit to Mitchell's supplemental motions for judgment notwithstanding the verdict relating to the second degree murder conviction. The court stated that in viewing the evidence in the light most favorable to the state, the jury verdict was "not substantiated or warranted and it should be a verdict of manslaughter." The court reduced the jury verdict accordingly. From these rulings, these appeals ensued.

Discussion

Sufficiency of the Evidence  Principal to Second Degree Murder
On appeal, the state argues that the trial court erred in granting Mitchell's motion *1244 for post-verdict judgment of acquittal based upon insufficient evidence to support the second degree murder conviction. The defendant argues that the evidence was insufficient to support the reduced manslaughter conviction because there existed no proof that Mitchell was a principal to the homicide.
La. R.S. 14:30.1 provides, in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm;

* * *
In pertinent part, La. R.S. 14:31 provides:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
* * *
"Sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigatory factors in the nature of a defense which exhibit a degree of culpability less than that present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986). A defendant who shows by a preponderance of the evidence that these mitigatory factors are present is entitled to the verdict of manslaughter. State v. Tompkins, 403 So.2d 644 (La.1981); State v. Lombard, supra; State v. Jackson, 34,076 (La.App.2d Cir.12/6/00), 774 So.2d 1046. The defendant is not obligated to establish the factors affirmatively; instead the jury may infer them from the overall evidence presented. State v. Jackson, supra.
The law of principals is found in La. R.S. 14:24 which provides:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
Under Louisiana law, a person may be convicted of intentional murder even if he has not personally struck the fatal blows. State v. Wright, 01-0322 (La.12/4/02), 834 So.2d 974. Only those persons, however, who knowingly participate in the planning or execution of a crime are principals. State v. Pierre, 93-0893 (La.2/3/94), 631 So.2d 427. Mere presence at the scene is not enough to "concern" an individual in a crime. Id. However, it is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed. State v. Logan, 36,042 (La.App.2d Cir.6/14/02), 822 So.2d 657, writ denied, 02-2174 (La.9/19/03), 853 So.2d *1245 621. A principal may be connected only to those crimes for which he has the requisite mental state. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78. In a specific intent homicide, the state must show more than the defendant's direct or indirect involvement but must show that the defendant specifically intended the death of the victim. State v. Pierre, supra. The intent of the accomplice cannot be inferred to the accused. State v. Mitchell, supra.
Regarding the post-verdict judgment of acquittal, La.C.Cr.P. art. 821 provides:
A. The defendant may move for a post verdict judgment of acquittal following the verdict. A motion for a post verdict judgment of acquittal must be made and disposed of before sentence.
B. A post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
C. If the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
D. If a post verdict judgment of acquittal is granted or if a verdict is modified, the state may seek review by invoking the supervisory jurisdiction of or by appealing to the appropriate appellate court.
E. If the appellate court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense, the court, in lieu of granting a post verdict judgment of acquittal, may modify the verdict and render a judgment of conviction on the lesser included responsive offense.
A motion for post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, 00-3070 (La.10/26/01), 799 So.2d 1150, 01-2087 (La.4/19/02), 813 So.2d 424. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient *1246 for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/05/99), 737 So.2d 747.
In this case, the state presented the testimony of twenty-two witnesses in proof of its case against Mitchell. Mitchell presented no evidence. Officers Presley and Reardon testified first. The officers were on duty at approximately 3:00 a.m. when they heard gunshots being fired. Reardon proceeded on foot while Presley traveled in the direction of the shooting on his bike. As the two approached Lacy's, they saw a man with a gun shooting into a crowd. Presley estimated that the crowd located in the Texas Street area numbered near one hundred people. The officers shouted to the man to drop his gun, but instead, he walked backwards toward the car parked across the street. The officers saw him enter the vehicle through an open back door. As soon as the shooter got in, the vehicle accelerated. The officers approached the car on opposite sides, ordering the occupants to stop. The car accelerated towards Presley twice and he feared being hit. Both officers began shooting into the vehicle and it decelerated, eventually coming to a stop. Officer Presley recalled the shooter sitting in the back seat and the driver trying to put the car in park. The officers arrested Persley and Mitchell. Officer Presley identified Mitchell as the driver of the vehicle.
Stephen Morgan was an eyewitness who testified to the events. From the Blind Tiger restaurant diagonally across from Lacy's, Morgan saw the bouncer escorting several men out of Lacy's while they argued with him. It appeared that everybody was being put out of the club. Morgan described the group of men as being loud and animated, and he thought they appeared upset. Three men went to a white Mercedes and engaged in an aggressive conversation before walking back across the street toward the club. Morgan believed they were armed due to their body language; they were slumped down and put their arms behind their backs, as if trying to hide something. Morgan saw the men stop at the corner of Spring Street with their backs against the Lacy's building and huddle together for a second. According to Morgan, two of them went back to the parked car while the third man rounded the corner and began shooting toward the front of Lacy's. Morgan witnessed a man near a black automobile on Texas Street get shot. Morgan stated that the three men in the white Mercedes began firing at the officers.[2] The Mercedes began moving slowly toward the officers. Although the officers attempted to stop it, Morgan saw the car speed up toward one of the officers as they fired at the vehicle. One of the passengers in the white Mercedes had been hit.
Derrick Washington was at Lacy's the same night with the victim and two other men. Washington remembered that a brawl took place in the club although he didn't know who was involved. He and his companions had left the club when he saw a group of guys being put out of the club. Washington was standing near a friend's black automobile parked on Texas Street when he heard gunshots coming from around the club. Rusley was standing behind Washington and beside the vehicle and got hit. Washington testified that no one in his group had guns that night and Rusley was not involved in the earlier fight.
*1247 Charlene Ward, the girlfriend of Rusley, witnessed the second altercation in Lacy's. Persley, Smith and Christaw got into a fight with someone who knocked Smith down. She eventually heard three shots outside of the club. Ward testified that approximately ten to twenty minutes transpired between the time the men were escorted out of the club and the gunshots were fired. When she left the club, she found Rusley unconscious.
James Harlin also witnessed the events from a nearby club. Harlin saw the shooter near Lacy's and noticed that he fired the second and third shots into the air. The shooter also shot in a westward direction up Texas Street. After the shooter stopped, Harlin saw him get into the back seat of the white Mercedes armed with a gun. Harlin identified the shooter as the same man the officers got out of the back seat of the car. He recalled that the officers pulled three people out of the vehicle. Although Harlin never specifically saw the driver, he saw the car hesitate and then move forward in the direction of the officer. Harlin saw Officer Presley on the sidewalk in the front of the vehicle. He heard the officers yell for the vehicle to stop, but it did not stop.
Joseph Lacy was speaking with Harlin and Officers Presley and Reardon outside the nightclub where he works when he heard gunshots coming from Lacy's. Lacy also saw the man with a gun walking backwards on the sidewalk towards the river. As the man walked backwards, he held his gun sideways and shot two or three more times in a westward direction up Texas Street. Lacy recalled the presence of people in the line of fire and that they hid behind a black Mercedes.
Other testimony also demonstrated that Persley had purchased both a 9mm Glock semiautomatic pistol on January 19, 2000, and a Glock, Model 22, .40 caliber pistol on December 21, 1999. Crime scene investigators testified that a .40 caliber Glock pistol was found in the right front passenger seat of the white Mercedes and a 9mm Glock pistol either on the rear seat or rear floorboard. Police recovered three 9mm Luger shell casings and two .40 caliber ELD shell casings at the crime scene and located a bullet hole in the door of Lacy's.
Richard Beighley, an expert in firearms comparison, examined the three 9 mm Luger shell casings found at the scene and the 9mm Glock pistol. After comparing bullets fired from the gun with shell casings found at the scene, Beighley concluded that some of the shell casings were indeed fired from the Glock pistol found in the white Mercedes. Beighley also concluded that the bullet recovered from Rusley possessed the same class characteristics and was consistent with those fired from the Glock. Beighley could neither make a positive identification nor eliminate that weapon as the source of the bullet. Beighley concluded that Rusley's bullet was not fired from a .40 caliber pistol like the one found in the car. However, Beighley matched two of the casings (ELD .40 caliber) and a projectile found in front of Lacy's to the.40 caliber Glock pistol found in the car.
The parties stipulated to the testimony of the Coroner, Dr. George McCormick, who determined Rusley's cause of death as internal hemorrhage caused by a single gunshot wound entering the right flank of his chest. Dr. McCormick removed the bullet from Rusley and had it transported to the crime lab.
The state's final witness was Demetrius Christaw. Christaw testified that on April 14, 2000, he was with Persley, Smith and Mitchell at Lacy's nightclub. That evening, the four traveled in Persley's white Mercedes and Persley drove. Christaw recalled that first Smith got into an altercation *1248 with two individuals but it broke up. A second fight erupted later between the same group but only Smith was involved. After the second fight, Christaw testified that the club was shut down. He testified that the individuals with whom Smith fought were not armed.
According to Christaw, the four men left the club and walked toward the white Mercedes. All four got into the car, where Persley and Smith retrieved two guns from the front seat. Mitchell obtained the keys from Persley and got into the driver's seat while Christaw got into the back seat. Christaw and Mitchell saw both Persley and Smith firing into "a lot of people out there." He believed that about a dozen people were within Persley's line of fire. Each man shot five or six times into the crowd. Mitchell was behind the wheel of the car when he saw Persley and Smith shooting. Smith shot towards the club and Persley aimed up Texas Street.
Christaw recalled seeing the two police officers approach the scene as Persley and Smith were coming back to the car. He believed Mitchell started the car before the other two returned, while the shooting was going on. Persley opened the door of the car and got into the back seat. Smith came back to the car and then ran south on Spring Street. Christaw got out of the car upon the officers' orders and lay on the ground. Christaw remembered the car rolling forward as Mitchell drove it. Christaw testified that the police officers screamed for them to stop. Christaw estimated that after traveling ten to twenty feet, the car eventually stopped.
On cross-examination, Christaw testified that Mitchell did not tell Persley or Smith to go back to the club and shoot. Christaw testified that Mitchell did not have a gun that night. Christaw's testimony did not reveal what the men discussed before the shootings occurred. Christaw was able to leave the scene without being arrested or questioned. He was not questioned about the incident until a few weeks before the trial.
Addressing the state's appeal of the post-verdict judgment for the lesser included offense of manslaughter, the trial court's judgment could rest on the conclusion under La. R.S. 14:31(A)(2) that the homicide which the jury found as second degree murder was committed by the main offender, Persley, without specific intent to cause death or great bodily harm.[3] Additionally, the trial court could have concluded that the homicide was "committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." We will therefore first examine each of those aspects of the case to determine whether the main offender, Persley, was shown to have committed second degree murder. We will then examine the issue of Mitchell's intent and involvement as a principal, which is contested by defendant's assignment of error.
Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the proscribed criminal consequences to follow his act or failure to act. La. R.S. 14:10. Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Mitchell, supra; State v. Van Sales, 38,138 (La.App.2d Cir.3/3/04), 867 So.2d 849. Regarding circumstantial evidence, however, the rule is: assuming every fact to be proved that the evidence tends to prove, in *1249 order to convict, it must exclude every reasonable hypothesis of innocence. La. R.S. 15:438.
The discharge of a firearm in the direction of a crowd of innocent bystanders has repeatedly been recognized in the jurisprudence as sufficient to prove specific intent to kill or inflict great bodily harm. State v. Mart, 419 So.2d 1216 (La.1982); State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1993), writ denied, 617 So.2d 905 (La.1993); State v. Allen, 94-1941 (La.App. 1st Cir.11/9/95), 664 So.2d 1264, writ denied, 95-2946 (La.3/15/96), 669 So.2d 433; State v. Powell, 94-1390 (La.App. 1st Cir.10/6/95), 671 So.2d 493, writ denied, 95-2710 (La.2/9/96), 667 So.2d 529; State in the Interest of L.H., 94-903 (La.App. 3d Cir.2/15/95), 650 So.2d 433; State v. Kennington, 515 So.2d 521 (La.App. 1st Cir.1987). In State v. Tyler, 342 So.2d 574 (La.1977), cert. denied, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977), the sixteen-year-old defendant on a school bus fired a single shot from a .45 caliber handgun into a crowd of over one hundred students and other persons at the school. Upholding the defendant's conviction for first degree murder, the Supreme Court found that the jury could infer the requisite specific intent, stating "there is authority in law for the proposition that shooting into a crowd indiscriminately with intent to kill someone is an assault with intent to kill each of them." Id. at 582. The specific intent to kill or to inflict great bodily harm is therefore present despite the defendant's lack of focus on a specific victim in the crowd because the circumstances indicate that the defendant actively desired at the minimum to inflict great bodily harm.
In this case, two of Mitchell's companions armed themselves in his presence and began shooting indiscriminately on the crowded street outside Lacy's. The witnesses established that Persley shot multiple rounds into the crowd. The victim fell as those shots were fired and before the police officers used their weapons confronting the perpetrators. Expert testimony at trial showed that the bullet found in the victim was consistent with the 9mm Glock handgun found in the car. Clearly, when this evidence is viewed in the light most favorable to the prosecution, Persley's actions exhibited specific intent to kill or inflict great bodily harm. The jurisprudence confirms that there is no requirement to inflict great bodily harm upon any one intended victim in the crowd or to kill a specific victim, so long as the circumstances indicate that the offender actively desired that great bodily harm follow as a consequence of his act. The evidence on this issue of specific intent was therefore sufficient to support the jury's verdict.
The next issue regarding the sufficiency of evidence by which the trial court could have reduced the second degree murder conviction to manslaughter concerns the mitigating factors of "sudden passion" or "heat of blood" resulting from provocation sufficient to deprive average persons of self-control or cool reflection. If this defense was established by a preponderance of the evidence, the trial court's post-verdict judgment of manslaughter may be affirmed.
The jurisprudence has frequently precluded a finding of "sudden passion" or "heat of blood" when a defendant leaves a heated argument for the purpose of arming himself and returns to shoot the victim. See, State v. Severin, 04-326 (La.App. 5th Cir.9/28/04), 885 So.2d 609; State v. Ducre, 596 So.2d 1372 (La.App. 1st Cir.1992), writ denied, 600 So.2d 637 (La.1992); State v. Allen, supra; State v. Lamb, 458 So.2d 996 (La.App. 3d Cir.1984). The present situation is significantly analogous to these *1250 cases. The jury could reject the possibility of manslaughter by concluding either: (1) that the altercations at Lacy's were not sufficient provocation to deprive average persons of self-control or cool reflection, or (2) that an average person's blood would have cooled by the time Persley shot Rusley. State v. Allen, supra.
Regardless of the degree of provocation experienced by the men in Lacy's or upon their removal from the premises, the evidence is clear that a significant period of time passed after their ejection from the club. During that time the men planned their further actions, armed themselves and returned to the place of the prior conflict. Stephen Morgan, who continuously watched the men after they were expelled from Lacy's, noted that he was surprised when the men did not leave the area but instead suspiciously remained inside the white Mercedes. He and the other witnesses established that a 10-20 minute time period elapsed before the shooting began. That lapse of time during the men's retreat to the car and their arming of themselves clearly establishes that Persley's later act of firing into the crowded street was not made in the heat of blood. We find therefore that the mitigating factors of sudden passion or heat of blood were not proven.
Last, the final issue concerns whether the evidence is adequate to show that Mitchell knowingly and actively participated as a principal in the second degree murder to the exclusion of every other reasonable hypothesis of innocence. See similar facts in State v. Mitchell, supra; State v. Smith, 26,661 (La.App.2d Cir.1995), 651 So.2d 890, writ denied, 95-0918 (La.9/15/95), 660 So.2d 458; and State v. Hall, 98-0667 (La.App. 4th Cir.12/22/99), 750 So.2d 1105, writ denied, 00-0483 (La.12/15/00), 777 So.2d 475. As the Supreme Court stated in State v. Holmes, 388 So.2d 722, 727 (La.1980), "it is necessary as to the co-conspirator who did not pull the trigger that the circumstances indicated that he also actively desired the death of or great bodily harm to the victim."
In State v. Mitchell, supra, four men traveled to see a fight between two groups of individuals. A passenger sitting next to Mitchell in the vehicle asked him for his gun to shoot when they started fighting. Mitchell complied but later informed the passenger that if he was not going to use the gun, he should return it. When the fight ended, the four men drove from the parking lot and the passenger fired five shots from the car into a crowd, hitting two innocent bystanders. The shooter returned the gun to Mitchell, but it was never recovered. A jury convicted Mitchell of attempted first degree murder. The court of appeal reversed the conviction finding that the evidence failed to exclude the reasonable hypothesis that Mitchell gave the gun to his friend with the intent that it would be used to fire into the air. The Supreme Court reinstated Mitchell's jury verdict noting that a reviewing court can only reverse a conviction when the jury could not have negated a potential alternative hypothesis for the defendant's action because specific intent was not proven. The crux of the state's case was proving the defendant's specific intent to kill, the same intent as the actual shooter in the attempted first degree murder. The court concluded that the appellate court was in error because the jury had heard evidence of specific intent to kill from the conversation between the two men which negated any alternative hypothesis.
The Mitchell ruling relied in part upon this court's similar case of State v. Smith, supra, in which the non-shooting driver was convicted as a principal to attempted second degree murder resulting from a *1251 drive-by shooting. The driver argued that he lacked the specific intent to kill. This court affirmed Smith's conviction even though Smith said nothing about actually killing anyone. Nevertheless, based upon evidence that Smith was at a party where the drive-by conspiracy was discussed, drove the vehicle down the street where the shooting occurred, assumed the role of lead vehicle in the convoy and turned off the headlights of the car, this court found no reasonable doubt concerning Smith's specific intent for the attempted homicide.
In considering Mitchell's involvement as a principal, we are mindful of the caution expressed by our supreme court that "not all principals are automatically guilty of the same grade of offense as the main offender because the mental state of the offenders may be different." State v. Mitchell, supra at 82. In other words, if the inferences of intent drawn from the evidence regarding Mitchell's involvement with Persley and Smith allow for a reasonable hypothesis of a lesser felony with only general criminal intent[4] as a requisite (see footnote 2, supra), the trial court's lowering of the grade of offense to manslaughter under La. R.S. 14:31(A)(2) may be justified despite our finding of the main offender's specific intent for second degree murder. Furthermore, Mitchell argues that there was no showing of Mitchell's intent as a principal regarding any grade of homicide.
There are multiple factors shown by the evidence from which Mitchell's intent regarding the shooting may be inferred. After the men were expelled from the nightclub, they returned to Persley's automobile. Stephen Morgan watched them cross Spring Street and described their actions, as follows: "Very loud, very animated, lots of hand gestures, lots of, kind of talking back and forth. You could tell that there was some aggression in that group of three gentlemen."[5] Once the men got inside the Mercedes, Morgan stated that he "noticed the three gentlemen were pretty animated, and real aggressive talking back and forth between each other, between the front seats and the back seats." Although Christaw was not questioned concerning the men's conversations in the vehicle, he testified that as he sat in the vehicle, he observed Smith and Persley arm themselves by obtaining guns from under the front seat. At this stage before the shootings began, Mitchell's key involvement was in taking the role as driver of Persley's vehicle. From that position, he was able to observe the men's exit from the vehicle, their suspicious movements along the side of the building where Lacy's is located, their turn onto Texas Street at the front of Lacy's and the shootings.
The crime itself involved two shooters. Although the evidence is more detailed regarding Persley's actions, Smith also fired a gun according to the testimony. Also, the evidence revealed spent shell casings from both guns found in the vehicle. The fact that the two shooters were in Mitchell's presence immediately prior to the crime, armed themselves, left the vehicle, and commenced firing into a crowded street evidences a plan for the use of deadly force in the crowd. This was not a *1252 random act by one panicked shooter and Mitchell's role in taking control of the car in preparation of the men's getaway ties him to the plan for the commission of the crime with specific intent for the use of deadly force on the crowded street.
Additionally, Mitchell's intent is evidenced by his actions during the shooting spree and thereafter. The testimony indicates that Mitchell started the car as the shooting began. He allowed Persley to return to the vehicle and may have aided him in obtaining access into the vehicle. Mitchell then drove the car forward toward the officer resisting arrest and threatening the safety of the officer. These actions as the shooting was occurring and immediately thereafter raise the inference of a "guilty mind" and imply awareness of the complete course of the wrongdoing which the men had planned together before the shooting began. State v. Mitchell, supra.
From all of these facts both before and after the shooting, the evidence establishes beyond a reasonable doubt Mitchell's aid in the commission of a crime with specific intent to inflict death or great bodily harm on the large crowd of people outside of Lacy's. Accordingly, we reverse the trial court's post-verdict judgment reducing the conviction to manslaughter and reinstate the jury's conviction of second degree murder.
Sufficiency of the Evidence  Attempted Manslaughter
Mitchell also argues the evidence does not support the jury verdict of attempted manslaughter of Officer Presley.
As noted above, the state charged Mitchell with attempted first degree murder for attempting to kill a peace officer engaged in the performance of his lawful duties in violation of La. R.S. 14:30 A(2) and La. 14:27. The jury returned a verdict of guilty of attempted manslaughter, a responsive verdict to the charged offense. La. C. Cr. P. art. 814 A(2); State v. Williams, 327 So.2d 399 (La.1976). To prove attempted first degree murder, the state must establish that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. State v. Fauchetta, 98-1303 (La.App. 5th Cir.6/1/99), 738 So.2d 104, writ denied, 99-1983 (La.1/7/00), 752 So.2d 176. Under Louisiana law, to be guilty of attempted murder, a defendant must have the specific intent to kill; the mere intent to inflict great bodily harm is insufficient to convict a defendant of attempted first or second degree murder. State v. Fauchetta, supra; Harris v. Warden, Louisiana State Penitentiary, 152 F.3d 430 (5th Cir.1998). In order to obtain a conviction for attempted manslaughter, the state must prove beyond a reasonable doubt that the defendant possessed the specific intent to kill. State v. Hutcherson, 34,540 (La.App.2d Cir.4/4/01), 785 So.2d 140; State v. Salone, 605 So.2d 229 (La.App. 2d Cir.1992); State v. Taylor, 96-320 (La.App. 3d Cir.11/6/96), 683 So.2d 1309, writ denied, 96-2828 (La.6/20/97), 695 So.2d 1348.
Here, the jury heard the testimony of Officer Presley and three eyewitness accounts of the events which showed that as the officer approached the white Mercedes, the driver accelerated toward the officer and almost hit him. Unlike Christaw, who heard the officers' commands and exited the vehicle, Mitchell instead attempted to run over the officer. From this evidence, a rational jury could have reasonably concluded that Mitchell's actions in attempting to run over the police officer with the car, demonstrated that Mitchell possessed the specific intent to kill the officer.

*1253 Ineffective Assistance of Counsel

Mitchell finally argues that his trial counsel was ineffective for failing to fully cross-examine the state's witnesses.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief in the trial court instead of on appeal. This is because post-conviction relief creates the opportunity for a full evidentiary hearing under La.C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App.2d Cir.6/21/00), 764 So.2d 1164. A motion for new trial is also an accepted vehicle to raise such a claim. Id. However, when the record is sufficient, this court may resolve this issue on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673; State v. Smith, 25,841 (La.App.2d Cir.2/23/94), 632 So.2d 887.
In this matter, after Mitchell's motion for new trial, the trial court declined to rule on the ineffective assistance of counsel claim finding that such issues would be better resolved by post-conviction relief. We agree that Mitchell's claims should be addressed after the opportunity for a full evidentiary hearing in which trial counsel can be given the opportunity to explain the motives behind his actions or omissions.

Conclusion
For the foregoing reasons, we reverse the trial court judgment reducing Mitchell's conviction to manslaughter and reinstate the jury verdict of second degree murder and remand for resentencing. We affirm the attempted manslaughter conviction.
AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR RESENTENCING.
BROWN, C.J., concurs with written reasons.
GASKINS, J., concurs for the reasons assigned by J. BROWN.
BROWN, C.J., Concurring.
I concur in the reversal of the trial court's judgment reducing defendant's conviction to manslaughter and with the reinstatement of the jury's second degree murder verdict. I question the discussion in our opinion as to what an accomplice's mental state must be to hold him accountable for an offense committed by another. Because in this case we have found that defendant did have the requisite specific intent to commit murder, this disagreement is of no moment.
I also believe that the Jackson reasonable doubt standard is the only standard of review for appellate courts. That standard is whether the evidence, direct or circumstantial, viewed in the light most favorable to the prosecution, was sufficient to prove the elements of the crime beyond a reasonable doubt. The Jackson standard is constitutionally required by the Due Process Clause of the Fourteenth Amendment, while La. R.S. 15:438 is a statutory (not constitutional) standard of evidence that is part of the inquiry by the finder of fact in assessing the evidence in a case where the evidence is circumstantial. In the case of circumstantial evidence, exclusion of every reasonable hypothesis of innocence is a component part of the more comprehensive reasonable doubt standard. A single standard for appellate review, comporting with the sufficiency standard established in Jackson, is all that is constitutionally required. See Justice Lemmon's *1254 concurrence in State v. Mitchell, supra at 86.
NOTES
[1] Smith was killed a few months later in another shooting.
[2] This fact was not confirmed by the officers' testimony.
[3] In this case, the jury was instructed regarding manslaughter under La. R.S. 14:31(A)(2) and one of the felonies listed for the jury was illegal use of a weapon under La. R.S. 14:94.
[4] La. R.S. 14:10(2) provides that "[g]eneral criminal intent is present when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act."
[5] Morgan recalled only three men crossing the street and getting into the vehicle, two in the front seat and one in the back.