CARAWAY, J.
|,After a jury trial on two counts of attempted second degree murder, Orlando Maurice Glover was found guilty of two counts of attempted manslaughter in violation of La. R.S. 14:31 and 14:27. Following an adjudication as a second felony offender, Glover was sentenced to concurrent sentences of 35 years at hard labor without benefit of parole, probation, or suspension of sentence on each count and ordered to pay court costs through the inmate banking system. Glover appeals his conviction and sentence. We affirm the conviction and amend the sentences.

Facts

In the late summer of 2007, 17-year-old Orlando Glover drove his vehicle at an excessive speed through the parking lot of an apartment complex located at 4305 Illinois Street in Shreveport, Louisiana. After 19-year-old James Maiden thought that Glover was trying to run him over, the two men briefly argued. Nothing further happened that day between the parties but the following day, the two men again exchanged words.
In the early afternoon of September 14, 2007, Maiden and two friends, including 12-year-old A.M. and Lucas White Johnson, were at the apartment complex sitting outside Jareika White’s apartment. At some point, Glover walked up and “said something” to the group. Maiden challenged Glover to a fight and the defendant pulled a gun out of his waistband and started shooting. White was exiting her apartment with her 4-month-old baby when the argument and shooting were taking place. At that time, the child was struck in the leg by a bullet. Those standing outside 12ran into White’s apartment as Glover continued to shoot. A.M. was also hit by a bullet in his right upper arm. Five or six shots were fired by Glover who then ran away.
After developing Glover as a suspect in the case, police prepared a photographic lineup on the same day as the shootings. Maiden, A.M., Johnson and White positively identified Glover as the shooter. A Crime Stoppers tip eventually led police to Glover who was arrested and charged with two counts of attempted second degree murder. A jury convicted him of two counts of attempted manslaughter. Glover was adjudicated a second felony offender based upon a 2007 illegal use of a weapon conviction which involved Glover’s negligent discharge of a firearm at a house. He was sentenced to concurrent sentences of 35 years at hard labor without benefit of parole, probation or suspension of sentence.[1]
After sentencing, Glover moved for a new trial which was denied by the trial court. Glover also sought reconsideration of his sentence on the grounds that the court failed to consider mitigating factors and imposed excessive sentences. The *134 court denied that motion on March 28, 2011. This appeal ensued.
On appeal, Glover argues that the state’s evidence was insufficient to overcome his proof that he acted in self-defense. He also argues that the trial judge’s failure to instruct the jury regarding the burden of proof in selfjdefense3 cases violated his due process rights and right to present a defense and that his trial counsel was ineffective in failing to object to the trial judge’s decision. Finally, Glover argues his sentences were constitutionally excessive considering the mitigating circumstances of the offense and his status as a juvenile.

Discussion

When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 80 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,-253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La. App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 08-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 09-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/6/09), 21 So.3d 299; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any | r,witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State *135 v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104,148 L.Ed.2d 62 (2000).
The offense of manslaughter is defined as a homicide that would be second degree murder, but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. La. R.S. 14:31; State v. Miller, 36,003 (La.App.2d Cir.7/25/02), 824 So.2d 1208, writ denied, 02-2480 (La.6/27/03), 847 So.2d 1253. Sudden passion and heat of blood are mitigatory factors in the nature of a defense which exhibits a degree of culpability less than present when the homicide is committed without them. State v. Lombard, 486 So.2d 106 (La.1986); State v. Williams, 44,977 (La.App.2d Cir.1/27/10), 32 So.3d 902, writ denied, 10-0368 (La.9/24/10), 45 So.3d 1071.
To support a conviction for attempted manslaughter, the state must prove the defendant specifically intended to kill the victim and committed an overt act in furtherance of that goal. State v. Jackson, 42,960 (La.App.2d Cir.2/13/08), 976 So.2d 279; State v. Mitchell, 39,305 (La.App.2d Cir.2/17/05), 894 So.2d 1240, writ denied, 05-0741 (La.6/3/05), 903 So.2d 457. See also State v. Williams, supra. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Jackson, supra. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1); State v. Draughn, 05-1825 (La.01/17/07), 950 So.2d 583, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007); State v. Linnear, 44,830 (La. App.2d Cir.12/9/09), 26 So.3d 303; State v. Jackson, supra. Specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person. State v. Jackson, supra.
In a given situation, a person may shoot at an intended victim with the specific intent to kill or inflict great bodily harm and accidentally kill or inflict great bodily harm upon another person. In such instance, if the killing or infliction of great bodily harm would have been unlawful against the intended victim, then it would be unlawful against the person actually shot. This is the doctrine of transferred intent. State v. Shivers, 43,731 (La.App.2d Cir.12/3/08), 998 So.2d 877, writ denied, 09-0161 (La.10/30/09), 21 So.3d 274; State v. Strogen, 35,871 (La.App.2d Cir.4/3/02), 814 So.2d 725, writ denied, 02-1513 (La.12/13/02), 831 So.2d 983; State v. Johnson, 29,629 (La.App.2d Cir.8/20/97), 698 So.2d 1051.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and review of that determination is to- be guided by the standard of Jackson v. Virginia, supra. State v. Linnear, supra.
The use of force or violence upon the person of another is justifiable under La. R.S. 14:19 when committed for the purpose of preventing a |7forcible offense against the person or a forcible offense or trespass against property in a person’s lawful possession, provided that the force or violence must be reasonable and apparently necessary to prevent such offense. See also La. R.S. 14:18. The standard of proof when a defendant claims self-defense in a non-homicide case is preponderance of the evidence. State v. Linnear, supra. The issue of self-defense requires a dual inquiry, an objective inquiry into whether *136 the force was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. State v. Linnear, supra; State v. Robinson, 37,043 (La.App.2d Cir.5/14/03), 848 So.2d 642.
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:22.
At trial, Maiden testified he was outside Jareika White’s apartment complex on September 14, 2007. Maiden testified that when Glover walked in front of White’s apartment where Maiden and his group were sitting, an argument ensued with Glover. Maiden knew Glover from a brief altercation that happened in the parking lot of the complex prior to that day. As Glover and Maiden argued, Glover pulled a gun from his waistband and fired it. Maiden did not get a good look at the gun, but recalled five shots being fired. As the shots were being fired, Maiden ran into the apartment while Glover ran in another direction.
[8On cross-examination, Maiden admitted that he and Glover “had words” on at least three occasions, shortly before the shooting. On the day of the shooting, neither Maiden nor his companions in front of the apartment had a weapon.
Johnson testified to the same basic facts as Maiden. Johnson is White’s brother and the cousin of A.M. Johnson testified that the group was sitting outside his sister’s apartment when Glover walked by and argued with Maiden. After Maiden invited Glover to fight, Glover responded by shooting at the group. When Maiden ran into White’s apartment, Glover continued to shoot at him and young victims were shot inside the apartment. Johnson testified that neither he nor his friends, Maiden or A.M., had a gun that day. He did not know why Maiden and Glover were arguing.
White testified that she was at home sitting in her living room talking with friends and family when she decided to walk to her sister’s apartment in the next building. As she was leaving her apartment, she heard two men arguing. When she looked to see what the commotion was about, she heard gunshots. White testified she saw Glover with the gun and she also saw him fire the gun. White turned to run back into her apartment, and she ran into her friend who had been exiting the apartment behind her. Following closely behind White was Johnson, A.M., her nephew, and Maiden. When everyone was in the apartment, they realized there was blood coming from someone. White checked her daughter and found that her leg was bleeding.
Detective Lane Smith of the Shreveport Police Department was dispatched to the scene of the shooting incident where he investigated the |9crime scene and later prepared the photographic lineup. Detective Smith obtained an arrest warrant and assisted in Glover’s arrest. After Glover was informed of his rights, he informed Detective Smith that “they shot at me first, he had a gun.” Glover also contested news reports of the crime. Detective Smith testified that Glover never denied that he was the person who committed this offense, “but he described it as an act of self-defense.” Detective Smith stated that Glover told him that he shot his gun three times but that police located four .380 caliber shell casings at the scene of the crime.
On cross-examination, Detective Smith testified that he investigated the self-defense possibility and “didn’t find any evi *137 dence that indicated that there were shots fired back.” He stated that police examined the scene, conducted interviews with witnesses, photographed the bullets and examined the entire perimeter of the apartment complex to make this determination. Detective Smith testified that he also explored the possibility that a revolver, which does not use shell casings, was involved in the shooting, but could find not evidence of that fact.
After the state rested its case, the defendant chose not to testify during the trial but presented the testimony of several witnesses. White was recalled to the stand. White explained that Maiden is Johnson’s best friend. She recalled that on the day of the shooting the two men did not enter her house before the shooting but were standing outside on the steps. She could not explain why police found 32 bags of marijuana in her apartment. She denied that either of the men placed the drugs in her house.
| mThe defense called other witnesses related to the defendant who described the certain previous altercations between Glover and Maiden. The witnesses were not present at the time of the shooting at Smith’s house.
When viewed in the light most favorable to the state, we find the evidence sufficient to support Glover’s attempted manslaughter convictions. The eyewitness testimony established that it was Glover who pulled a gun from his waistband and began shooting at Maiden after he challenged Glover to fight. Glover admitted to police that he shot a gun. This evidence is more than adequate to establish that Glover possessed the requisite specific intent to kill or to inflict great bodily harm that resulted in injury to innocent bystanders.
Moreover, the claim of self-defense was mentioned only by Glover in his initial statements to police. He indicated that he was firing back at someone when he engaged his weapon. By all the eyewitness accounts of the incident, however, it was only Glover who was armed at the time of the shooting. Despite Maiden’s statements to Glover about fighting, no witness reported that Maiden directed hostile action toward Glover before the shooting. Even if the jury believed that Maiden and Glover had previous altercations in which Maiden had a gun, no evidence established that at the time of the offense, anyone other than Glover fired or even possessed a gun. Thus, the jury could have reasonably rejected Glover’s claim and found that Glover intended to kill Maiden and committed an overt act in furtherance of that goal which injured innocent bystanders. This assignment is without merit.
Inin his second assignment of error, Glover argues that the trial court erred in failing to instruct the jurors on the applicable standard of proof for self-defense. Glover also contends that his trial counsel was ineffective for failing to object to the trial court’s decision not to instruct the jury regarding the. burden of proof for self-defense or specifically request that the jury be so instructed. Glover contends that a properly instructed jury would have found that he fired his gun in self-defense.
This court has held that the burden of proof of self-defense in a non-homicide case rests upon the defendant. That burden of proof is preponderance of the evidence, not beyond a reasonable doubt. State v. Cheatham, 38,413 (La.App.2d Cir.6/23/04), 877 So.2d 164, writ denied, 04-2224 (La.6/24/05), 904 So.2d 717; State v. Robinson, supra. This is because the Supreme Court has indicated that in non-homicide situations the defense of self-defense includes a subjective inquiry into whether the force was apparently neces *138 sary, unlike the homicide situation where only an objective inquiry into whether the defendant reasonably believes that he is in imminent danger of losing his life is required. State v. Freeman, 427 So.2d 1161 (La.1983). Other circuits have disagreed and placed the burden of proof on the state. The Louisiana Supreme Court has made no definitive statement on the issue.
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the |12time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury. La.C.Cr.P. art. 801(C).
The court shall charge the jury: (1) As to the law applicable to the case; (2) That the jury is the judge of the law and of the facts on the question of guilt or innocence, but that it has the duty to accept and to apply the law as given by the court; and (3) That the jury alone shall determine the weight and credibility of the evidence. La. C.Cr.P. art. 802.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La.C.Cr.P. art. 807; State v. Gipson, 28,113 (La.App.2d Cir.6/26/96), 677 So.2d 544, writ denied, 96-2303 (La.1/31/97), 687 So.2d 402.
An improper jury instruction is a trial error subject to harmless review error analysis. State v. Cage, 583 So.2d 1125 (La.1991), cert. denied, 502 U.S. 874, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991). An improper jury instruction on self-defense is also subject to harmless error analysis. State v. Richardson, 92-836 (La.App. 5th Cir.12/14/94), 648 So.2d 945, writ denied, 95-0343 (La.6/23/95), 656 So.2d 1011. The harmless error analysis evaluates whether the guilty verdict actually rendered in the trial was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a | iafull eviden-tiary hearing under La.C.Cr.P. art. 930. State v. Hampton, 98-0331 (La.4/23/99), 750 So.2d 867, cert. denied, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139, writ denied, 07-2190 (La.4/4/08), 978 So.2d 325. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,-394 (La.App.2d Cir.9/27/95), 661 So.2d 673.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Egan, 44,879 (La.App.2d Cir.12/9/09), 26 So.3d 938; State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, the defendant first must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. The relevant *139 inquiry is whether counsel’s representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra. The assessment of an attorney’s performance requires his conduct to be evaluated from counsel’s perspective at .the time of the occurrence. A reviewing court must give great deference to trial counsel’s judgment, 114tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Grant, 41,745 (La. App.2d Cir.4/4/07), 954 So.2d 823, writ denied, 07-1193 (La.12/7/07), 969 So.2d 629; State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991).
Second, the defendant must show that counsel’s deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, ie., a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123, writ denied, 02-1570 (La.5/30/03), 845 So.2d 1067.
In this case, the issue of self-defense was not raised in voir dire or opening statements. However, at trial, evidence was introduced by the state through the officers’ testimony which indicated that Glover made a statement that he shot because he was first fired upon.
Prior to closing arguments and the charging of the jury, several bench conferences were held regarding the jury charges. After the last bench 115conference, the court noted that “one issue that has come about in this case is to the burden of proof with regard to a self-defense issue in a non-homicide case.” The court had reviewed cases provided by counsel and ultimately concluded that in light of a circuit split and the lack of Louisiana Supreme Court guidance on the issue, no instruction would be given with regard to whether the state or the defense had the burden of proof on the issue. The court also noted that should the jury inquire about the issue, the court would consider further argument from counsel.
The court instructed the jury as to the provisions of La. R.S. 14:19(A), which addresses the use of force of violence in self-defense in non-homicide cases. Following the trial court’s ruling, Glover’s attorney stated:
Your Honor, this is John Bokenfohr on behalf of Mr. Glover. I participated in the conversations regarding the competing jurisdictions on the interpretation of the statute, Your Honor, and I have no objection to the Court’s decision.
Immediately after this statement, closing arguments began. Defense counsel argued that the jury was required to consider self-defense in light of Glover’s claims to police after he was arrested. Counsel read the provisions of La. R.S. 14:19 to the jury. Thereafter, in rebuttal the state argued that the only proof of self-defense was Glover’s self-serving statement to police. The state argued that *140 the aggressor doctrine precluded Glover from raising the issue of self-defense.
After the completion of arguments, the court instructed the jury without the inclusion of the self-defense burden of proof.
|1fiIn this case, there is no doubt that the jury was amply instructed regarding self-defense. In fact, Glover’s counsel included the instruction during his closing arguments. The sole issue before us is whether the trial court’s failure to charge the jury regarding which party held the burden of proof with respect to any potential self-defense claim prejudiced Glover. The lack of an objection by Glover, however, precludes appellate review of this issue. Moreover, any error in the failure of the court to give such an instruction is harmless. In the general instructions, the jury was correctly instructed regarding the state’s burden of proof beyond a reasonable doubt. We have previously determined that the evidence was sufficient to prove that Glover did not act in self-defense. There is no showing made that even a preponderance of the evidence demonstrates self-defense. Any error in the failure to include the instruction effectively placed a more onerous burden upon the state to disprove the subjective element of the defense, to the benefit of Glover. Thus, no prejudice has been demonstrated. State v. Cheatham, supra.
Glover has also raised a claim that his trial counsel was ineffective in failing to raise an objection. While normally reserved for post conviction relief, the record appears to be sufficient to review the claim. It is arguable that counsel was fully aware that the lack of the instruction of burden of proof would ultimately benefit Glover. Such trial strategy must be afforded great deference by this court. Even if error is presumed, however, Glover could not demonstrate prejudice because as noted above, the state’s evidence conclusively established that Glover did not act in self-defense. Accordingly, Glover’s ineffective assistance of counsel claim has no merit.
117In his final assignment of error, Glover argues that the imposed sentences are excessive because they place him in jail for the bulk of his adult life, fad to give him an opportunity to become a productive member of society, and serve no legitimate “penological purpose for a juvenile defendant.” Glover contends that the trial court failed to give appropriate weight to the critical factor of his youth as well as the important mitigating factors in this case that included provocation. He argues that he should have been sentenced to no more than the minimum 10 years in prison.
The test imposed by the reviewing court in determining the exces-siveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Watson, 46,572 (La.App.2d Cir.9/21/11), 73 So.3d 471. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La.App.2d Cir.8/13/08), 989 So.2d 267, writ denied, 08-2697 (La.9/18/09), 17 So.3d 388. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, *141 health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 11s(La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Taves, 03-0518 (La.12/3/03), 861 So.2d 144; State v. Caldwell, 46,718 (La.App.2d Cir.11/2/11), 78 So.3d 799.
The second portion of the review requires that a determination be made regarding the constitutional exces-siveness of a sentence. A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Washington, 46,568 (La. App.2d Cir.9/21/11), 73 So.3d 440, writ denied, 11-2305 (La.4/27/12), 86 So.3d 625.
The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Diaz, 46,750 (La.App.2d Cir.12/14/11), 81 So.3d 228. On review, an appellate court does not deter mine whether another sentence may have been more appropriate, 11flbut whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir.1/25/12), 86 So.3d 29.
A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook, 95-2784 (La.5/31/96), 674 So.2d 957, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).
In this case, as a second felony offender, for the offenses of attempted manslaughter, Glover faced potential sentencing exposure of not less than 10 nor more than 40 years. Prior to his sentencing Glover apologized to the court, the victims and the victims’ families. Thereafter the court sentenced Glover after considering the following 894.1 factors:
1) The court determined that there existed an undue risk that during the period of a suspended sentence Glover would commit another crime based upon the fact that Glover was on probation for a very similar offense when he committed the present crime. The court noted that the facts of that case involved a silver revolver and an argument between Glover and a neighbor just months before the present offense. Glover shot at the neighbor’s house.
2) Glover was in need of correctional treatment based upon his being on probation for a similar offense at the time he fired shots in the present offense.
3) The court determined that a lesser sentence would deprecate the seriousness of the defendant’s crime in light of the fact that Glover repeatedly demonstrated that he was a violent offender.
The court next considered the following aggravating circumstances of the ease. Glover manifested deliberate cruelty to the victim in that he pulled out a pistol after *142 an argument with the victim and began shooting. He hit two innocent bystanders who were children. The court also considered that Glover created a risk of death or great bodily harm in shooting into a crowd of people and used threats of actual violence in an earlier argument with the victim. The court observed that Glover used a dangerous weapon in the |2ncommission of the crime that involved multiple victims for which separate sentences have not been imposed. The court also determined that Glover foreseeably endangered human life by the discharge of a firearm during the commission or attempted commission of an offense which has as an element the use, attempted use, or threatened use of physical force against the person or property of another and which involved a substantial risk.
The court considered as mitigating factors the fact that the victim’s criminal conduct induced or facilitated the commission of the crime as the intended victim was a willing participant in the exchange. The court noted that both of the victims were brought in from a juvenile detention for armed robbery charges. The court also took into account Glover’s young age of 17 at the time of the offense in fashioning the imposed sentences.
After considering all of these factors, the court imposed concurrent sentences of 35 years at hard labor without benefit of parole, probation or suspension of sentence. In a motion to reconsider sentence, Glover argued that the court did not adequately weigh the mitigating factors presented by Glover’s youth, the circumstances of the crime and his expression of remorse and that the imposed sentences were constitutionally excessive.
Glover’s concurrent sentences of 35 years’ imprisonment at hard labor are in the upper range for a second felony offender who committed the crime of attempted manslaughter. Nevertheless, we fail to find that the trial judge abused its sentencing discretion in imposing these sentences. The record before us demonstrates an appropriate weighing of the mitigating factors by the trial court. Very thorough consideration was given by the court regarding both provocation and Glover’s age. Given the jury’s | ⅞1 rejection of Glover’s self-defense claim, the remaining facts show that it was Glover who violently and inappropriately responded to a verbal altercation by firing into a crowd of people. Such facts fail to support Glover’s claim that he acted under “strong provocation” and support the trial court’s evaluation of the facts.
Nor do we find merit to Glover’s argument that his age at the time of the offense is a “significant mitigating circumstance weighing in favor of a more lenient punishment.” A review of the cases cited in brief by Glover in support of this argument reveal many distinguishing facts from the present situation.[2]
We recognize that Glover’s youth should be considered as a factor which affects his culpability and potential for rehabilitation. Yet, at the time of the offense, he was on probation for firing a gun at a house after a similar disagreement *143 with another individual. Consideration of his lack of rehabilitation is appropriate in this case. That Glover has failed to benefit from prior leniency in sentencing is evidenced by his persistence in the very behavior that caused his previous arrest and conviction. His disregard of the law is also evidenced by his illegal possession of a gun. This pattern of serious conduct including Glover’s dangerous use of guns as a defense to verbal altercations between youths created the risk of death or great bodily harm to multiple individuals that is likely to recur. When balanced against |a2his continued disregard for the law and lives of others, his youth is outweighed by the gravity of his conduct and the resulting offenses. We find the imposed sentences to be appropriately tailored to this defendant and not out of proportion to the severity of this offenses. This assignment of error is without merit.
We find one error patent on the face of the record. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La.C.Cr.P. art. 882(A). Further, the appellate court may notice sentencing errors as error patent. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790.
La. R.S. 15:529.1(G) provides that a sentence imposed under the habitual offender statute shall be without benefit of probation or suspension of sentence only. There is no parole restriction. However if the underlying statute carries a denial of parole provision, the court may deny parole for the enhanced sentence. State v. Bobo, 46,225 (La.App.2d Cir.6/8/11), 77 So.3d 1, writ denied, 11-1524 (La.12/16/11), 76 So.3d 1202. However, when this crime was committed, the sentence for manslaughter provided no parole restriction. La. R.S. 14:31 Thus, the trial court erred in denying parole eligibility for Glover. We therefore amend his sentences to delete the denial of parole. In all other respects the sentences are affirmed.

Decree

For the foregoing reasons, Glover’s convictions are affirmed. His concurrent 35-year sentences are amended to delete the restrictions on parole eligibility, but are otherwise affirmed.
| ^CONVICTIONS AFFIRMED; SENTENCES AMENDED AND AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, SEXTON and HARRISON, JJ.
Rehearing denied.

. On the day of sentencing, Glover also pled guilty to possession of a firearm by a convicted felon and received an agreed-upon sentence of 10 years at hard labor without benefit of parole, probation or suspension of sentence. The sentence was imposed concurrently with Glover’s sentences for attempted manslaughter. The three sentences were ordered to be served consecutively with Glover's remaining time on his earlier illegal use of a weapon conviction for which his probation was revoked.

. Those cases, including State v. Paddie, 434 So.2d 392 (La.1983), State v. Sepulvado, 367 So.2d 762 (La.1979), and State v. Walker, 29,-877 (La.App.2d Cir. 10/29/97), 702 So.2d 18, involved youthful defendants with no criminal records or any previous tendency toward violence. Equally unpersuasive to our analysis are Graham v. Florida, - U.S. -, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), and Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), which concerned review of life sentences imposed without parole on juvenile non-homicide offenders and the propriety of execution of defendants who were under 18 years old at the time of their capital crimes.