STEWART, J.
| ^Defendant Cory B. Leone was convicted of attempted manslaughter, and sentenced to serve 20 years of hard labor. For the reasons that follow, this court affirms the defendant’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
On July 21, 2012, the defendant shot his fiancé, Breanna Pearce, in the head while they were en route to their home in Zwolle, Louisiana, from Shreveport, Louisiana. On September 10, 2012, the defendant was initially charged via bill of information of attempted second degree murder, in violation of La. R.S. 14:27 and 14:30.1. The defendant’s charges were amended to attempted second degree murder, in violation of La. R.S. 14:27 and 14:30.1, and second degree kidnapping, in violation of La. R.S. 14:44.1, on September 12, 2012.
On May 8, 2013, the jury trial began. The following evidence was adduced at trial.
Breanna Pearce (“victim”), testified that the defendant is the father of her youngest child, and that her relationship with him ended the night the incident occurred. She testified that on July 20, 2012, she and the defendant traveled to Shreveport from their hometown, Zwolle, to celebrate her 21st birthday. Upon their arrival, the couple stopped at Outback Steakhouse for dinner and drinks. She testified that she had one of the margarita samples, and the defendant had a “few” beers at Outback. The couple then went to El Dorado Casino, where the victim tasted several drinks that she didn’t like, and the defendant consumed at least eight beers. After staying at El Dorado for about an hour, the defendant decided to go to Horseshoe Casino. |sThe victim testified that they never went to the actual casino. Rather, they remained at the bar, where the victim stated that she ordered a margarita that she did not like, and the defendant had “too many [beers] to count.”
While at Horseshoe, the victim testified that she saw her brother’s brother-in-law, Zack. She greeted Zack with a hug, and talked to him and his three male friends for about two minutes when the defendant angrily approached them. The defendant, *797 unaware of the victim’s relation to the Zack, confronted Zack. This interaction created a disturbance at the bar, and prompted the bouncer to ask the defendant to leave. After being asked to leave several times, the defendant left. The victim apologized to Zack and his friends, and followed the defendant.
The couple went to Horseshoe’s parking garage to retrieve the defendant’s truck. The victim stated the defendant was “just mad and ranting and raving” about Zack and his friends, and began to look for his gun, stating that he was going to “go find ’em.” The defendant found his gun, but she convinced him to stay inside the truck.
The victim began to drive them back to Zwolle, and while still holding the gun, the defendant called his mother using the victim’s phone. He told his mother about the events that took place at the bar. At some time during the defendant’s conversation with his mom, the victim testified that the defendant became belligerent. He began to accuse the victim of cheating on him because she was hugging Zack. As she merged onto 1-49, the defendant put the gun to her head. The victim testified that she began to cry and asked him to stop.
Still holding the gun to the victim’s head, the defendant tried to call |4her brother, but was unable to reach him. The victim testified that she had no choice as to whether she should continue driving because the defendant was holding his gun to her head, ordering her to drive. He also threatened to kill the victim, her parents, her brother, her brother’s wife, her oldest son, his family, and himself.
Once the couple reached DeSoto Parish, the victim exited 1-49, and began driving down a side road. The victim noticed the defendant fidgeting with the gun. He rolled down the passenger side window and attempted to fire the gun out of the window. After a couple attempts, the defendant was able to fire a successful shot out of the window. He then put the gun back to the victim’s head.
At that time, the victim testified that the defendant was on the phone with someone that she did not know. She overheard him saying, “it was too late, it’s not [sic] I [victim] would get out the truck and not say anything.” She interpreted this statement to mean that the defendant was going to kill her. At that moment, the victim asked the defendant to let her get out of the truck. The defendant told her to “shut up” and fired his gun through the windshield. The victim testified that at that point, she had almost reached a stop sign, and that she was about to turn left onto Highway 171.
After the defendant fired the gun through the windshield, he put it back to her head and started to cry. The defendant then shot her in the head. The victim recalled hearing a loud ringing, slowing the truck down, and pulling off the road. She testified that she blacked out, but remained conscious. She heard the defendant saying, “Oh my God, Oh my God,” and “I’m sorry.” Then, the defendant shot himself.
|RThe victim testified that she got out of the vehicle initially, but she decided to get back in, turn the vehicle around, and head back toward the hospital. When she saw headlights in the rear view mirror, she stopped the truck in the road, felt her way to the end of the tailgate, and attempted to get someone’s attention. When no one came, she got back into the truck, and continued driving until she was pulled over by the police. She was able to tell Deputy Stephanie White that the defendant shot her, that he shot himself, and that he was still in the truck. The victim was airlifted to the hospital.
*798 A few minutes after arriving at the hospital, the victim gave her statement to the police. She testified that she told an officer that the shooting “had to be an accident,” because she loved the defendant and did not want to believe that he intended to shoot her. After thinking about the events that transpired that night, the victim’s beliefs changed. She stated that it couldn’t have been an accident if the defendant repeatedly expressed that he was going to kill her, and then shot her. The gunshot shattered the victim’s sinus cavity, leaving her permanently blind in her left eye.
Bobby Wayne Smith, a saltwater hauler, testified that on July 21, 2012, at approximately 2:00 a.m., he was driving on Highway 171 in DeSoto Parish. He testified that he approached a truck parked in the middle of the road, and the driver of the truck was leaning up against the back wheel of the vehicle with the door open. Smith had to swerve into the grassy median to avoid hitting the truck. He then pulled over onto the northbound shoulder of the road, and called 9-1-1. Smith explained that he called 9-1-1 because he noticed that the driver was leaning over against the back of the truck, and |fihe couldn’t tell what type of condition the passenger of the truck was in. While on the phone with an emergency dispatcher, he witnessed the driver get back into the truck and drive away. Soon thereafter, the truck was stopped by the police.
Deputy Stephanie White of the DeSoto Parish Sheriffs Office, was the first officer to arrive on the scene. White testified that upon arrival, the truck was stopped in the middle of the road. The victim exited the truck and dropped to her knees. The victim told White that her fiancé, the defendant, had shot her, then himself, and that he was still in the truck. White observed that the victim’s face and clothes were bloody, that the left side of her face was swollen, and that she had an injury to the right side of her face. White testified that she and the victim remained at the back of her vehicle until backup arrived. When the DeSoto Parish EMS team removed the defendant from the truck, White noticed that he also had a head injury. A shell casing was found in the folds of the defendant’s pants as he was being removed from the truck. Additionally, a .40 caliber firearm was found in the truck.
Deputy Joe West, an investigator for the DeSoto Parish Sheriffs office, testified that he spoke with the victim at LSU Hospital for approximately 20 to 30 minutes on July 21, 2012. West testified that during that time, the victim, who was fully alert, told him that the defendant had shot her. The victim also told West that she believed it was an accident, and that she did not think the defendant intended to kill her. West collected, as evidence, the victim’s and the defendant’s clothing, as well as the bullet that was recovered from the defendant’s head.
Gordon Miller and Brent Crawford of the DeSoto Parish EMS team 17responded to the shooting. Miller, who treated the victim at the scene, testified that she was upset, distressed, and sobbing, but that she was alert and able to answer all of his questions. Miller stated that she had a gunshot wound that entered below her right eye, and exited below her left eye. He explained that the victim had no exteri- or bleeding because the blood was draining down her throat. This caused the victim to vomit blood. There were gun powder burns and gun powder residue around the entry wound, which Miller testified was an indication of close contact between the firearm and the wound. Miller considered the victim’s injury to be life threatening.
Crawford, who treated the defendant at the scene, testified that the defendant suf *799 fered from a single gunshot wound to his right upper forehead region. He stated that the defendant was breathing, but was not responding otherwise. Crawford considered the defendant’s injuries to be life threatening.
Sergeant John Cobb, an investigator for the DeSoto Parish Sheriffs Office, testified that on August 9, 2012, he took a statement from the victim at his office. The victim admitted that she had a few drinks, and that the defendant was drunk. She also stated that the incident was an “accident,” and that the gun “wasn’t to my temple.” Cobb stated the victim’s statement that the gun wasn’t to her temple is inconsistent with the burns on her face. The victim’s burns indicated that the gun was fired from one to six inches away from her face.
On May 9, 2013, the jury found the defendant guilty of the responsive verdict of attempted manslaughter. Regarding the second degree kidnapping charge, the defendant was found not guilty.
IsAfter considering the information contained in the presentence investigation report, as well as the victim impact statements, the trial court concluded:
Because of the seriousness of the offense and the damage imposed, the defendant is in need of correctional treatment or custodial environment that can most be effectively provided by his commitment to an institution and the most serious part of it is any lesser sentence than the one imposed would deprecate the seriousness of the defendant’s crime.
The trial court sentenced the defendant to 20 years’ imprisonment at hard labor, with credit for time served. On July 11, 2013, the defendant filed a motion to reconsider sentence, arguing that the defendant’s sentence was excessive considering his young age and first-felony offender status. The motion was denied, and the defendant now appeals, asserting two assignments of error.
LAW AND DISCUSSION

Sufficiency of the Evidence

In the defendant’s first assignment of error, he alleges that the evidence adduced at trial was insufficient to convict him. Specifically, he alleges that the state failed to negate that his intoxicated state prevented him from satisfying the specific intent requirement necessary to convict him of attempted second degree murder or attempted manslaughter.
When issues are raised on appeal, both as to the sufficiency of evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could 1 ahave found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App.2d Cir.1/14/09), 1 So.3d 833. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. Jackson, supra.
*800 The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial evidence provides |inproof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by the evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299. This is not a separate test that applies instead of a sufficiency of the evidence test when circumstantial evidence forms the basis of the conviction. Id. Rather, all of the evidence, both direct and circumstantial, must be sufficient under Jackson to convince a rational juror that the defendant is guilty beyond a reasonable doubt. Id.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, supra; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. The fact finder is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Eason, supra; State v. Casey, 99-0023 (La.01/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000). Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, 36,147 (La. App.2d Cir.12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490.
La. R.S. 14:30.1, which defines second degree murder, states in pertinent part:
A. Second degree murder is the killing of a human being:
*801 (1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, assault by drive-by shooting, armed robbery, first degree robbery, second degree robbery, simple robbery, cruelty to juveniles, second degree cruelty to juvenile, or terrorism, even though he has no intent to kill or to inflict great bodily harm.
La. R.S. 14:31, which defines manslaughter, states in pertinent part:
A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 h?.(first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed;
Further, La. R.S. 14:27(A) provides:
A. Any person who, having the specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
To support a conviction for attempted manslaughter, the state must prove the defendant specifically intended to kill the victim and committed an overt act in furtherance of that goal. State v. Glover, 47,311 (La.App.2d Cir.10/10/12), 106 So.3d 129, writ denied, 2012-2667 (La.5/24/14), 116 So.3d 659; State v. Mitchell, 39,305 (La.App.2d Cir.2/17/05), 894 So.2d 1240, writ denied, 05-0741 (La.6/3/05), 903 So.2d 457. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); Glover, supra; State v. Davies, 35,783 (La.App.2d Cir.4/05/02), 813 So.2d 1262, unit denied, 2002-1564 (La.5/9/03) 843 So.2d 389. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. Glover, supra, The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and review of that determination is to guided by the standard of Jackson v. Virginia, supra. Glover, supra.
The Louisiana Supreme has held on more than one occasion that | ^specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing at a person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Williams, 383 So.2d 369 (La.1980). Further, the discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Dooley, 38,763 (La.App.2d Cir.9/22/04), 882 So.2d 731, writ denied, 2004-2645 (La.2/18/05), 896 So.2d 30; State v. Brooks, 36,855 (La.App.2d Cir.3/05/03), 839 So.2d 1075, writ denied, 2003-0974 (La.11/07/03), 857 So.2d 517.
Intoxication is a defense when the circumstances indicate that the intoxicated or drugged condition precluded the presence of a specific intent or of special *802 knowledge required in a particular crime. La. R.S. 14:15. Intoxication is an affirmative defense that must be proved by the defendant by a preponderance of the evidence. State v. Guess, 47,370 (La.App.2d Cir.8/8/12), 104 So.3d 41; State v. Hall, 43,920 (La.App.2d Cir.2/25/09), 4 So.3d 295, writ denied, 2009-0691 (La.12/11/09), 23 So.3d 911; State v. Tolbird, 28,986 (La.App.2d Cir.12/11/96), 685 So.2d 415. If the defendant proves that he was intoxicated at the time of the offense, the state has the burden of negating that defense by proof beyond a reasonable doubt. Guess, supra; Hall, supra. The jury is the ultimate fact-finder of whether a defendant proved his intoxicated condition and whether the state negated the defense beyond a reasonable doubt. State v. Legrand, 2002-1462 (La.12/3/03), 864 So.2d 89, cert. denied, 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part as to issues regarding the question of intoxication. State v. Taylor, 42,627 (La.App.2d Cir.10/24/07), 968 So.2d 1135; Mitchell, supra.
In this case, the defendant has not disputed that he shot the victim. Therefore, we must determine whether the state proved that the defendant had the requisite specific intent to kill the victim, even though he was intoxicated.
While driving back home to Zwolle, the victim testified that the defendant was angry, even belligerent, and had repeatedly threatened to kill her while holding a gun to her head. Even though the evidence establishes that the defendant consumed a large amount of alcohol and was intoxicated that night, the defendant was able to make several phone calls to accurately inform others of what had transpired at the bar. As the defendant and the victim were traveling along the side road in De-Soto Parish, the defendant rolled down his window and fired several shots to ensure that he had cleared his jammed gun. He then shot out the front windshield of the truck, put the gun back to the victim’s head, and shot her in the head. In fact, the shot was made so close to the victim’s head that she suffered from gun powder burns and had gun powder residue around the entry wound. The defendant’s expressions of remorse after he had shot the victim at close range does not mean that he did have the requisite specific intent to kill her.
The testimony and evidence presented at trial, when viewed pursuant to the Jackson standard in the light most favorable to the prosecution, was sufficient to support the conviction of attempted manslaughter. This 11sevidence was sufficient for the jury to infer beyond a reasonable doubt that the defendant was aware of what he was doing in his intoxicated state. The defendant was not intoxicated to the point that he was unable to form the requisite specific intent to kill the victim. The overt acts of repeatedly holding the gun to the victim’s head while threatening to kill her, and ultimately firing it, when reviewed in a light most favorable to the prosecution, manifests an intent to kill. This assignment of error is without merit.

Excessiveness of Sentence

In the defendant’s second assignment of error, he alleges that the trial court erred in sentencing him to the maximum sentence of 20 years for his attempted manslaughter conviction. He further alleges that the application of this maximum sentence constitutes cruel and unusual punishment in accordance with La. Const. Art. 1, § 20.
An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness. First, the record must *803 show that the court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Lathan, 41,855 (La. App.2d Cir.2/28/07), 953 So.2d 890, writ denied, 2007-0805 (La.3/28/08), 978 So.2d 297. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has h ¿not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Swayzer, 43,350 (La. App.2d Cir.8/13/08), 989 So.2d 267. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir. 8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Shumaker, 41,547 (La.App.2d Cir.12/13/06), 945 So.2d 277, writ denied, 2007-0144 (La.9/28/07), 964 So.2d 351.
Second, the court must determine whether the sentence is constitutionally excessive. A sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166.
The trial judge is given wide discretion in imposing sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7.
As a general rule, maximum or near maximum sentences are reserved 117for the worst offenders and the worst offenses. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802; State v. Woods, 41,420 (La. App.2d Cir.11/1/06), 942 So.2d 658, writs denied, 2006-2768, 2006-2781 (La.6/22/07), 959 So.2d 494. The maximum penalty for manslaughter is 40 years’ imprisonment at hard labor. La. R.S. 14:31(B). The maximum penalty for attempted manslaughter is 20 years’ imprisonment at hard labor. La. R.S. 14:27(D)(3).
The record indicates that the trial court took cognizance of the sentencing guidelines set forth in La. C. Cr. P. art. 894.1. At the sentencing hearing, the trial court noted that it had reviewed the victim impact statements and the presentence investigation report. It acknowledged that the defendant was a first felony offender, and recited the defendant’s criminal history. The trial court also noted for the record that in its opinion, the jury, despite ample evidence, showed great leniency and mercy on the defendant. It expressed that there was more than sufficient evidence to convict the defendant as charged of attempted second degree murder, but that the jury was within its province of finding the defendant guilty of attempted manslaughter.
*804 Regarding the aggravating circumstances, the trial court noted that the evidence establishes that the defendant’s conduct during the commission of the offense manifested deliberate cruelty, and that the defendant created a risk of death or great bodily harm to more than one person. Further, the defendant made threats and used actual violence during the commission of the offense. The offense resulted in the victim’s sinus cavity being shattered, | isleaving her permanently blind in her left eye, and her constant fear the defendant will harm her again. She also suffered from economic loss. The defendant used a firearm in the commission of this offense.
The court also acknowledged the mitigating circumstances, noting the defendant’s lack of any significant criminal history prior to this offense, and the defendant’s youth. It noted the defendant received, by his own hand, a significant injury to himself in response to his actions.
The trial court found no evidence that the defendant would commit another offense during a period of suspension or probation. However, as stated in the facts section of this opinion, the trial court determined that because of the seriousness of this offense, and the damage imposed, the defendant was in need or correctional treatment or a custodial environment that could be most effectively provided by his commitment to an institution.
The record reveals that the trial court adequately considered the appropriate mitigating and aggravating circumstances in determining the defendant’s sentence pursuant to La. C. Cr. P. art. 894.1. Considering the seriousness of the defendant’s offense in shooting his fiancé, who is also the mother of his child, and the significant permanent injury she sustained, the 20-year sentence imposed by the trial court does not shock the sense of justice, nor is it disproportionate to the severity of the offense. The defendant committed a very serious crime without regard for human life, including his own. The trial court did not abuse its discretion in imposing the maximum sentence for the defendant’s attempted manslaughter conviction. This assignment of error is meritless.
CONCLUSION
|1sWe affirm the defendant’s 20-year sentence pursuant to his attempted manslaughter conviction.
AFFIRMED.