Judgment rendered November 20, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 992,
La. C. Cr. P.

No. 52,993-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                           Appellee

versus

KEVIN D. McHENRY                             Appellant

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Morehouse, Louisiana
Trial Court No. 2015-521F

Honorable C. Wendell Manning, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By:  Carey J. Ellis, III

KEVIN D. McHENRY                             Pro Se

ROBERT S. "STEVE" TEW                    Counsel for Appellee
District Attorney

JOHN GATES SPIRES
Assistant District Attorney

* * * * *

Before PITMAN, McCALLUM, and THOMPSON, JJ.

**PITMAN, J**.

Defendant Kevin McHenry was convicted of cruelty to a juvenile and sentenced to ten years at hard labor. He appeals his conviction and sentence. Defendant's appellate counsel has filed a motion to withdraw, along with a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), alleging that there are no nonfrivolous issues upon which to base the appeal. For the following reasons, we affirm Defendant's conviction and sentence and grant appellate counsel's motion to withdraw.

### FACTS

Defendant was charged with second degree cruelty to a juvenile, J.D., born July 19, 2006, in violation of La. R.S. 14:93.2.3. On March 6, 2017, he waived his right to a jury trial.

At the bench trial held June 22, 2017, J.D. testified that on August 9, 2015, he was staying with his father and grandmother in Bastrop when Defendant came to their house. He stated that Defendant became angry with him after his younger sister, V.D., accused him of doing "negative stuff" where they "were touching on each other." He testified that Defendant put his hand on his throat and slammed him into a wall and then Defendant "stomped" him in the stomach and chest and hit him in the head with his fist. He further testified that he recalled telling a police officer who came to the house what had happened. He was taken to the hospital, and his head injuries were treated with stitches. He stated that his dad, Veneric McHenry ("Veneric"), punished him for the incident with his sister by "whooping" him on the butt.

At the time of the offense, Officer Colby Ainsworth worked at the Bastrop Police Department.[1] He testified that he responded to a 911 call regarding the disturbance at issue in this trial. Veneric was upset and emotional and informed him that Defendant had beaten and kicked his child. Neither Defendant nor J.D. was at the scene when he arrived, but J.D. was returned to the scene by a man named Chris McHenry. He further testified that he saw bleeding from a laceration on J.D.'s head and lip. He also saw that J.D. had dried blood on his face, neck and shirt and had urinated on himself. J.D. was crying profusely and repeatedly told him that Defendant had beaten him up by hitting and kicking him.

Ofc. Ainsworth further testified that he accompanied J.D. to the hospital and photographed his injuries. He stated that J.D. reiterated that Defendant had thrown him against a wall, kicked him, punched him with a closed fist, chased him outside, and kicked him again and struck him in the head. He identified the photographs he took at the hospital. He testified that Defendant voluntarily appeared at the police station and signed a waiver of rights before giving a statement. He stated that Defendant admitted that he was very angry with J.D. and wanted to kill him and that he also grabbed J.D.'s shirt and yelled and cursed at him. However, Defendant insisted that it was Veneric who had struck J.D.

Defendant testified that just two weeks prior to the incident he had been released from jail after being held for over three years on a charge of attempted murder. He stated that that charge had been dismissed and that he had no felony convictions. On August 9, 2015, he spent the entire day with

_____

[1] At the time of the trial, Ainsworth worked at the Ouachita Parish Sheriff's Office and is addressed as Deputy Ainsworth in the transcript.

2

his cousin's daughter, six-year-old V.D., so that he could reestablish his bond with her after his long incarceration, and he allowed her brother, J.D., to tag along.

Defendant further testified that he became very angry after V.D. told him that J.D. tried to get her to engage in sexual activity. He stated that he wanted to "whoop" J.D., but decided that he should not touch him since he had just been released from jail. He ordered V.D. to go inside and tell her father what had happened. When he ordered J.D. to go inside, J.D. refused, so he grabbed his arm and made him go inside. He testified that after V.D. told her father what had happened, Veneric slapped J.D. across the head three times and then called the children's mother on the phone. After the phone call, Veneric accused V.D. of lying and said she would get "a whooping." Defendant testified that he was trying to console V.D. when he saw J.D. running from the house. He stated that he saw J.D.'s "leg wobble like a noodle" and then the child fell face-first. J.D. then got up and began running down the road near the ditch where he fell face first on the road. He stated that J.D. "lay on the ground holding his head and crying and going crazy bucking like a horse." He went inside to collect his things, having promised V.D. that she could spend the night with him. However, when he returned, his brother and sister had arrived and locked V.D. in the car with J.D. His sister accused him of hitting J.D. in the head and told him to "look what you did." He became very angry with his sister and cussed her because she had accused him of "busting [J.D.'s] head." He testified that he left when he was not allowed to take V.D. home with him.

Defendant further testified that he turned himself in at the police station when he found out that the police were looking for him. He stated

that both of the officers he spoke with, including Ofc. Ainsworth, "straight up lied." He admitted grabbing J.D. by the shirt, but denied pushing him against a wall or causing his injuries.

On cross-examination, Defendant confirmed that his previously dismissed charge had been for attempted second degree murder because he shot at someone. He testified that he emptied one magazine and had five bullets left in another one, but maintained that "he was in the right."

V.D., now age 8, testified that J.D. received his injuries when "My daddy was whooping on him and he tripped and fell on something and he busted his head on some glass" and that J.D. was not in the street when he got hurt, but "was in the rocks and the glass." She stated that she did not see Defendant hit J.D. She testified that her father spanked J.D. one time on the butt. As she was dismissed and leaving the courtroom, she spoke to the judge and said, "What my brother told you, he told you a lie." The trial court allowed additional examination, and V.D. explained that she meant that her brother lied about what he told the police. She admitted, however, that she was not there when J.D. talked to the police and that she had gotten the information from someone else.

The trial court articulated reasons for judgment and noted that it had to weigh the witnesses' credibility due to the conflicting testimony, and it found J.D.'s unequivocal and articulate testimony to be very credible. It also noted Ofc. Ainsworth's testimony concerning Defendant's extreme anger during the investigation. It did not find Defendant's testimony to be credible and noted inconsistencies in his narrative. It concluded that the victim's sister, V.D., appeared to have been coached in her testimony and did not find it to be credible.

4

The trial court further found that the state proved the required elements for a conviction of the responsive verdict of cruelty to a juvenile, in violation of La. R.S. 14:93, and found Defendant guilty. A presentence investigation ("PSI") report was ordered. Defendant incurred new felony charges regarding unrelated incidents, and a sanity commission was ordered prior to sentencing. Sentencing was delayed several times.

On March 8, 2018, after reviewing the sanity commission report, the trial court concluded that Defendant was competent to proceed and the sentencing hearing was held. It reviewed the offense for which Defendant was convicted and the sentencing range, stating that his juvenile and adult criminal histories had been reviewed. The instant conviction was Defendant's first felony conviction, but the record showed he had a history of violent crimes in which many of the charges had been dismissed or the sentences were suspended. It noted a separate pending charge from May 1, 2012, of cruelty to a juvenile, for striking a 15-year-old in the face with a closed fist. That charge was apparently going to be dismissed after Defendant's sentencing in this case.

The trial court also noted that while incarcerated and awaiting trial on the instant charge, Defendant incurred two additional charges for fights at the parish jail. On October 28, 2015, he allegedly committed second degree battery of another inmate. On January 26, 2017, he allegedly committed second degree battery on a different inmate. Both charges were pending and were set to be dismissed upon sentencing in the instant offense. On May 31, 2017, Defendant was found with a shank and charged with possessing contraband in a penal institution. That charge was also set to be dismissed. Finally, on September 15, 2017, Defendant was charged after an inmate was

5

found unconscious with head wounds and had to be transported by ambulance to the hospital. The PSI report indicated that the investigation, corroborated by video, revealed that when the inmate grabbed the television remote from Defendant's bed, Defendant began "stomping and kicking him six or seven times after he fell to the floor." The inmate suffered traumatic brain injuries. Defendant has been charged with second degree battery for that incident, which remains pending.

The trial court reviewed the facts of the underlying conviction in this matter. It reviewed the sentencing guidelines under La. C. Cr. P. art. 894.1 and noted an undue risk that Defendant would commit another crime, that he needed correctional treatment in a custodial environment and that any lesser sentence would deprecate the seriousness of the offense. It also found that Defendant manifested deliberate cruelty to his juvenile victim, who he knew was particularly vulnerable due to his extreme youth, and that he used actual violence in the commission of the offense. No applicable mitigating factors were found.

The trial court reviewed Defendant's social history and educational history, noting that he had been suspended multiple times for fighting before finally being expelled in the ninth grade. Defendant had a brief employment history, had never married and had no children. He reported no alcohol or drug abuse.

The trial court deemed Defendant one of the worst offenders, for whom the maximum sentence was appropriate, for brutally beating a nine-year-old child by hitting and kicking him in the face and head and then blaming the child. It noted Defendant's numerous violent crimes and that he continued to accumulate charges while incarcerated and stated, "To say the

defendant cannot control his anger is a gross understatement." It agreed

with the probation officer's statement in the PSI report that Defendant seems

to resort to violence to solve any disagreements or problems, stating:

> The Court agrees with the probation officer's summation, that
> McHenry has wreaked havoc in Morehouse Parish for more
> than 12 years. He should be stopped. The Court also stresses
> that the defendant had already been shown a great deal of
> leniency by the fact that three other charges will apparently be
> dismissed upon sentencing in this present case.

The trial court sentenced Defendant to serve the maximum sentence of

ten years at hard labor, with credit for time served. The conviction was

designated as a crime of violence. It also ordered that a protective order

issue in favor of the child, J.D. Defendant's motion to reconsider sentence

was denied April 9, 2018. He was advised of his right to appeal and to seek

post-conviction relief. He was granted an out-of-time appeal on

February 19, 2019.

## DISCUSSION

On appeal, Defendant's appellate counsel filed an *Anders* brief and a

motion to withdraw, alleging that he could find no nonfrivolous issues to

raise on appeal. *See Anders v. California*, *supra*; *State v. Jyles*, 96-2669 (La.

12/12/97), 704 So. 2d 241; *State v. Mouton*, 95-0981 (La. 4/28/95),

653 So. 2d 1176; and *State v. Benjamin*, 573 So. 2d 528 (La. App. 4 Cir.

1990).

Defense counsel's brief conforms to the procedures set forth in

*Anders*, *supra*; *Jyles*, *supra*; *Mouton*, *supra*; and *Benjamin*, *supra*. It

outlines the procedural history of the case and the evidence presented at trial

and contains a reviewable assessment for both Defendant and the appellate

court of whether the appeal is even worth pursuing. *Mouton*, *supra*. It

contains a verification that counsel mailed copies of the appellate brief and the motion to withdraw to Defendant.

By this court's July 23, 2019 order, the motion to withdraw was held in abeyance and Defendant was granted additional time to file a pro se brief; however, no such brief was ever filed.

The state filed a brief asserting that the record supported the decision that Defendant intentionally mistreated and caused unjustifiable pain and suffering to the nine-year-old victim. It also contended that he was properly sentenced to serve the maximum of ten years at hard labor.

In 2015, La. R.S. 14:93, defined cruelty to juveniles as the intentional or criminally negligent mistreatment or neglect by anyone 17 years of age or older of any child under the age of 17 whereby unjustifiable pain or suffering is caused to the child. The penalty for a conviction of cruelty to juveniles was a fine of $1,000 or imprisonment, with or without hard labor, for not more than ten years, or both. La. R.S. 14:93(D).

The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). A reviewing court must consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id.*, *supra*; *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Crossley*, 48,149 (La. App. 2 Cir. 6/26/13), 117 So. 3d 585, *writ denied*, 13-1798 (La. 2/14/14), 132 So. 3d 410.

8

The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. *State v. Glover*, 47,311 (La. App. 2 Cir. 10/10/12), 106 So. 3d 129, *writ denied*, 12-2667 (La. 5/24/13), 116 So. 3d 659. A victim's or witness's testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. *State v. Lensey*, 50,242 (La. App. 2 Cir. 11/18/15), 182 So. 3d 1059, *writ denied*, 15-2344 (La. 3/14/16), 189 So. 3d 1066, *citing State v. Davis*, 02-1043 (La. 6/27/03), 848 So. 2d 557. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *Lensey*, *supra*.

The juvenile victim, J.D., testified at trial that Defendant became angry with him, slammed him into a wall, stomped him in the stomach and chest and then hit him in the head with his fist. His testimony was corroborated by Ofc. Ainsworth, who testified that during his investigation of the 911 call, he observed J.D. and noticed bleeding from a laceration on his head and lip, in addition to dried blood on his face, neck and shirt. He also noted that J.D. was crying profusely and had urinated on himself. J.D. repeatedly told him that Defendant kicked him and hit him. J.D.'s head injuries were treated at the hospital with stitches. The trial court found their testimony to be credible.

After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of cruelty to a juvenile proven beyond a reasonable doubt. *Jackson v. Virginia*, *supra*. The evidence was sufficient to support the conviction for the responsive verdict of cruelty to a juvenile.

Defendant was sentenced to the maximum of ten years at hard labor, which was within the applicable sentencing range, and, given the facts and circumstances in this matter, does not appear excessive. Although this was his first felony conviction, the trial court noted that Defendant's record demonstrated a history of violent crimes and that he had incurred additional charges for second degree battery for fights at the parish jail while this matter was pending. It also noted that Defendant manifested deliberate cruelty by brutally beating his nine-year-old victim.

## CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant Kevin D. McHenry are affirmed, and appellate counsel's motion to withdraw is granted.

**CONVICTION AND SENTENCE AFFIRMED; MOTION TO WITHDRAW GRANTED.**

10